COMMONWEALTH vs. JAMES PURDY.

Suffolk. October 2, 1990. - November 27, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Sex Offender. Practice, Civil*, Sex offender. *Evidence*, Sex offender. *Constitutional Law*, Sex offender, Equal protection of laws, Cruel and unusual punishment. *Due Process of Law*, Sex offender.

A proceeding under G. L. c.. 123A, § 6, was properly initiated in March, 1986, by the superintendent of a correctional facility against an inmate then serving a sentence, and amendments to that statute appearing in St. 1985, c. 752, effective April 6, 1986, did not apply to the proceeding. [683-684]

In a proceeding against an inmate of a correctional institution for his commitment as a sexually dangerous person, initiated under G. L. c. 123A, § 6, as in effect prior to its amendment by St. 1985, c. 752, there was no occasion to consider whether this amendment created classes of prisoners in violation of equal protection principles. [684-685]

In the circumstances of a proceeding under G. L. c. 123A, § 6, the judge properly refrained from entering a final order with respect to a State prisoner's sexual dangerousness and properly continued the case, where the prisoner had not been examined in accordance with the statute; therefore further proceedings were not precluded by considerations of due process. [685-686]

In a proceeding for commitment under G. L. c. 123A, § 6, brought in the Superior Court against a State prisoner two days before he became eligible for parole, no special circumstances gave rise to a presumption of punitive intent by the Commonwealth. [686-687]

PETITION filed in the Superior Court Department on August 13, 1986.

Motions to dismiss were heard by *Robert A. Mulligan*, J., and *Guy Volterra*, J., respectively, and a question of law was reported to the Appeals Court by *Volterra*, J. The Supreme Judicial Court transferred the case on its own initiative.

*Mary Ann Driscoll* for the defendant.

*Nijole Makaitis*, Assistant District Attorney, for the Commonwealth.

NOLAN, J. This case requires us to review the denial of two motions to dismiss a petition brought by prison officials to commit the defendant as a sexually dangerous person pursuant to G. L. c. 123A, § 6. The defendant contends that the court may not properly commit him under the statute since he has engaged in no sexually assaultive behavior while in prison, that further proceedings on this matter are precluded by a prior failure to find him sexually dangerous, and that the petition is punitive and therefore unconstitutional as cruel and unusual punishment. We affirm the denial of defendant's motions and direct that a hearing be held to determine whether he should be committed for treatment as a sexually dangerous person.

In March of 1986, the defendant, James Purdy, was an inmate at the Southeastern Correctional Center (SECC) serving a three to five year sentence for assault and battery by means of a dangerous weapon. Purdy was apparently eligible for parole on August 10, 1986. On March 19, 1986, the superintendent of SECC wrote to the Commissioner of Mental Health requesting a psychiatric evaluation of Purdy pursuant to G. L. c. 123A, § 6, in order to determine whether he was a sexually dangerous person. Purdy was then examined by a single qualified examiner. In a letter dated August 8, 1986, the superintendent petitioned the Superior Court for a hearing to determine whether Purdy should be committed for treatment as a sexually dangerous person pursuant to G. L. c. 123A, § 6.

Purdy filed a motion to dismiss the petition, alleging that it could not properly be brought against him because he had not committed a sexual assault in prison and that the petition was punitive and therefore unconstitutional. A judge in the Superior Court denied the motion. On January 14, 1988, another judge issued a memorandum order in which he held that, although he was convinced beyond a reasonable doubt that Purdy was sexually dangerous, the Commonwealth had not properly complied with the examination procedures set

forth in G. L. c. 123A, § 6. The judge therefore ordered that those procedures be followed and a second hearing be held upon their completion.

Before the second hearing, Purdy filed another motion to dismiss arguing that further proceedings were precluded by the failure of the judge to find him sexually dangerous. The judge denied the motion but reported the matter to the Appeals Court. A single justice of that court allowed Purdy's motion to join an appeal of the denial of the earlier motion to dismiss with the reported matter. We transferred the case on our own motion and now determine that the Superior Court may properly hold a hearing to determine whether Purdy ought to be committed for treatment under G. L. c. 123A, § 6.

General Laws c. 123A, § 6, provides a method by which prison superintendents may initiate commitment proceedings to provide treatment for prisoners who are sexually dangerous. As it existed prior to amendment in 1986, the statute provided that whenever a prisoner appeared to the superintendent of the correctional institution to be sexually dangerous the superintendent could seek a psychiatric evaluation and, subsequently, a commitment of the prisoner. G. L. c. 123A, § 6, as amended through St. 1978, c. 478, § 72. Sexually assaultive behavior while in custody was not a prerequisite to the institution of commitment proceedings under this version of the statute. See *Commonwealth* v. *Gomes*, 355 Mass 479, 486 (1969).

Effective April 6, 1986, the Legislature amended G. L. c. 123A, St. 1985, c. 752. The amendment established a more rigorous procedure for instituting commitment proceedings under § 6. The new statute required that, before the superintendent could institute such proceedings, the prisoner must have engaged in sexually assaultive behavior while in custody.

Purdy asserts that the superintendent could not initiate proceedings under G. L. c. 123A, § 6, against him in the absence of sexually assaultive behavior while in prison. However, under the statute, Purdy was not entitled to the added

protections of the amended § 6. The act which amended G. L. c. 123A states that the revised § 6 applies "only to persons sentenced for offenses committed on or after the effective date of this act." St. 1985, c. 752, § 4. Those incarcerated for acts committed prior to the effective date remained subject to the former § 6. Since Purdy was serving a sentence for an offense committed prior to the effective date of the act, his commitment is governed by the former § 6. Under the statute, therefore, the only prerequisite to the institution of commitment proceedings in Purdy's case was a belief by the superintendent that Purdy was sexually dangerous.

Purdy claims, however, that the statute violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. He argues that St. 1985, c. 752, § 4, arbitrarily establishes two distinct groups within the prison population, and that members of one may be more easily committed as sexually dangerous persons than members of the other. Regardless of the merit this argument may have with reference to proceedings instituted after the effective date of the amendment,[1] it has none here. On March 19, 1986, the date on which the SECC superintendent commenced c. 123A proceedings against Purdy, all prisoners were subject to the same version of G. L. c. 123A, § 6. At that time, the prison population was homogeneous for purposes of the prerequisites to instituting §6 proceedings. None of the prisoners on that date could have been incarcerated for

---

[1]Soon after April 6, 1986, the prison population became divided into two groups for purposes of instituting c. 123A, § 6, commitment proceedings. For those prisoners serving time for offenses which antedate April 6, 1986, the superintendent of the correctional facility may institute § 6 proceedings based on the mere belief that the prisoner is sexuallly dangerous. Prisoners incarcerated for later offenses may not have such proceedings instituted against them unless they commit a sexual assault while in custody. Since we hold that a split population did not exist when the instant proceedings were instituted, we do not reach the question whether the division of the prison population established by St. 1985 c. 172, § 4, has a rational basis sufficient to withstand equal protection scrutiny.

crimes committed after the effective date of the amendment, more than two weeks later.

In this case, therefore, there is no legal classification sufficient to trigger equal protection analysis. The mere fact that some persons were at some later date governed by a law more favorable to them than the law which applied to the defendant is insufficient to strike down an otherwise valid statute; to hold the opposite would be either to eradicate all new statutes or to make them all retroactive. General Laws c. 123A, § 6, as it existed prior to the amendment by St. 1985, c. 752, governs Purdy's commitment, and that statute is constitutional as it applies to Purdy.

Purdy next argues that any further proceedings in this matter are precluded because of the failure of the judge at the hearing to find Purdy to be sexually dangerous. This court has held that due process principles impose some degree of finality on a finding that the person is not sexually dangerous. *Commonwealth* v. *Travis*, 372 Mass 238, 246 (1977). In *Travis*, the defendant had been committed for an indeterminate length of time as a sexually dangerous person. Later, he was found to be no longer sexually dangerous and conditionally released. When Travis violated a condition of his release, a judge in the Superior Court vacated the finding that the defendant was no longer sexually dangerous and recommitted him. This court held that a finding that an individual was not sexually dangerous could not be vacated without denying him due process of law. The statute in *Travis* required a finding that the individual was no longer sexually dangerous prior to conditional release. Due process principles mandate that a person who is not sexually dangerous may not be held in a treatment facility for sexually dangerous persons. *Travis* held that, once an individual has been adjudged to be not sexually dangerous, any future attempt to commit the same individual as a sexually dangerous person must be newly initiated under c. 123A. A prior adjudication of no sexual dangerousness may not be vacated. The court took pains to point out that a conditional release without such a finding could be vacated without violating due process

rights. *Id.* at 251. In the absence of a finding that the individual is not sexually dangerous, there can be no due process violation under *Travis.*

In this case there was never a finding that Purdy was not sexually dangerous. To the contrary, the judge was convinced beyond a reasonable doubt that Purdy *was* sexually dangerous. The judge could not act on this finding under the statute, however, because Purdy had been examined by only one qualified examiner. The statute requires that, if the initial examiner's report indicates that the prisoner may be sexually dangerous, the prisoner may be committed for up to sixty days and examined by two qualified examiners. Only if the report of the two examiners clearly indicates that the prisoner is sexually dangerous may the superintendent petition for commitment to the treatment center. Since the judge found that Purdy was examined by only one qualified examiner, the matter was not properly before the court, and he therefore could make no finding as to Purdy's sexual dangerousness.

Purdy attempts to analogize the Commonwealth's failure to have him properly examined to the Commonwealth's failure to prove guilt beyond a reasonable doubt in a criminal case. This comparison is inapposite. The failure of the Commonwealth to examine the defendant in the manner prescribed by the statute did not mandate a finding that Purdy was not sexually dangerous, but rather deprived the judge of the power to make a lawful finding as to sexual dangerousness. The judge properly refrained from entering a final order and in effect continued the case without a finding until the statutory requirement was met. Because there was no effective judgment on the merits, nor *any* final judgment, Purdy's invocation of res judicata and collateral estoppel are without merit.

Finally, Purdy asserts that the petition for commitment should be dismissed because it is unconstitutional as cruel and unusual punishment. General Laws c. 123A is a nonpenal, rehabilitative statute. *Commonwealth* v. *Gomes*, 355 Mass. 479, 484 (1969). Use of its commitment proceedings

as a punishment would be cruel or unusual in violation of the Eighth Amendment to the United States Constitution and in violation of art. 26 of the Massachusetts Declaration of Rights. Purdy's sole factual support for the theory that prison officials used this petition to punish him is that the superintendent filed the petition two days before Purdy became eligible for parole.

Purdy relies on *Meola* v. *Fitzpatrick*, 322 F. Supp. 878 (D. Mass. 1971), for the proposition that any initiation of commitment proceedings close to the end of a prisoner's sentence creates a presumption of punitive intent which the Commonwealth must rebut. That case, however, expressly avoided such a general rule, relying rather on "the special circumstances of this case" to justify requiring the Commonwealth to present evidence concerning its lack of punitive intent. *Id.* at 887 & n.13. The special circumstances in *Meola* were a prison environment where punishment was routinely and arbitrarily meted out and the prisoner in question was denied access to the courts in order to seek redress for his grievances. The court held that these circumstances, combined with the timing of the commitment petition, were enough to provide an inference of punitive intent which the prison officials were then required to rebut. *Id.* at 887.

In this case there are no such special circumstances. The timing of the petition in relation to Purdy's parole eligibility date, by itself, is perhaps not even enough evidence from which to infer punitive intent. Even if such an inference had been raised, the Commonwealth introduced evidence of legitimate, good faith reasons for the timing of the petition sufficient to support the finding of the judge that the petition was not brought in order to punish Purdy.

Because we affirm the denial of both motions to dismiss, we remand this matter to the Superior Court for further proceedings to determine whether the defendant ought to be committed for treatment as a sexually dangerous person under G. L. c. 123A, § 6.

*So ordered.*