COMMONWEALTH vs. ALFRED ARMENT.

Hampden. September 10, 1991. - February 27, 1992.

Present: LIACOS, C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Sex Offender. Constitutional Law*, Equal protection of laws, Sex offender. *Practice, Civil*, Sex offender.

Chapter 752, § 4, of the Acts of 1985, on the date it became effective, April 6, 1986, subjected prisoners to classification for purposes of instituting G. L. c. 123A, § 6, commitment proceedings, resulting in different treatment of the two classes, and where no rational relationship existed between the classification and a legitimate State interest, the classification violated the equal protection rights of the burdened class. [57-63]

A prisoner committed to the treatment center for sexually dangerous persons under G. L. c. 123A, § 6, whose right to equal protection of the laws was violated by the classification of prisoners for purposes of such commitment under St. 1985, c. 752, § 4, was entitled to immediate release from the treatment center. [63]

MOTION for commitment filed in the Superior Court Department on October 22, 1986.

The motion was considered by *Raymond R. Cross*, J., and further proceedings were held before *William W. Simons*, J.

The Supreme Judicial Court granted a request for direct review.

*Peter M. Onek*, Committee for Public Counsel Services, for the defendant.

*Judith Ellen Pietras*, Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. In this case, we hold that commitment of the defendant to the treatment center for sexually dangerous persons at the Massachusetts Correctional Institution at Bridgewater pursuant to G. L. c. 123A, as appearing in St. 1985, c. 752, § 4, violated his Federal and State constitu-

tional rights to equal protection of the laws. We remand the case to the Superior Court for the entry of an order that the defendant be released from confinement forthwith.

In October, 1985, the defendant pleaded guilty to twenty-one indictments charging indecent assault and battery on a child under age fourteen and three indictments charging assault and battery. On November 21, 1985, the defendant was sentenced to two consecutive terms of two and one-half years each at the Hampden County house of correction on two of the counts of indecent assault and battery on a child under the age of fourteen. On the remaining counts, the defendant was sentenced to three years of probation commencing at the conclusion of his incarceration. When the defendant's incarceration began in late November, 1985, the procedure at the Hampden County house of correction relative to the possible initiation of sexually dangerous person (SDP) proceedings was that Dr. Roy A. Dudley, the director of the sexual abuse treatment program at that institution, would request Terrance Aberdale, the institution's medical director, to arrange for an initial screening evaluation of the new inmate by Aaron M. Leavitt, M.D. No letter would be sent to the Department of Mental Health (department). In November, 1985, Dudley took steps to acquire the necessary records and other documents for Dr. Leavitt's screening of the defendant. It took many months to obtain those materials. On June 11, 1986, Dudley notified Aberdale that there was sufficient documentation in the defendant's file and in the files of six other inmates to request Dr. Leavitt to conduct preliminary screening evaluations of those individuals. We discuss the significance of that date below.[1]

---

[1]Our recitation of facts concerning the usual procedures at the Hampden County house of correction and the dates that relevant events occurred in this case is based on materials submitted to the Appeals Court by both parties. The Appeals Court permitted the papers to be filed, but referred the "propriety of the filing" to the panel assigned to decide the appeal. We then granted the defendant's application for direct appellate review. We have concluded that justice will be served by our making use of the filed documents.

On August 19, 1986, Dr. Leavitt, having been assigned by the department to examine the defendant, reported to the Hampden County house of correction that the defendant might be an SDP and that he should be committed to the treatment center for a sixty-day observation period. A judge in the Superior Court then allowed a motion of the Hampden County sheriff, who is also the superintendent of the house of correction, for a sixty-day commitment to the center for evaluation and diagnosis pursuant to G. L. c. 123A, § 6 (1984 ed.). Ultimately, in April, 1988, following a hearing, another judge found that the defendant was an SDP and committed him to the treatment center for a term of from one day to life. The defendant appealed.

On appeal, the defendant argues for the first time that G. L. c. 123A, as appearing in St. 1985, c. 752, denied him equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution and art. 1 of the Masssachusetts Declaration of Rights. The Commonwealth has not argued that, by not raising the equal protection issue in the Superior Court, the defendant has waived it. We treat the issue as properly here.

Statute 1985, c. 752, § 1, amended G. L. c. 123A (1984 ed.), by striking out §§ 1-11 and inserting in their place twelve new sections.[2] As thereby amended, c. 123A, § 6, provided in relevant part: "If a prisoner under sentence in any jail, house of correction or prison . . . engages in sexually assaultive behavior while under such sentence . . . and appears to the sheriff, keeper, master, superintendent or director of the facility in which he is under sentence . . . to be a sexually dangerous person and in need of the care and treatment provided at the center, such officer may notify the commissioner of mental health, who shall thereupon cause such prisoner to be examined by a qualified examiner at the institution wherein he is confined. . . . Such qualified examiner

---

[2]Subsequently, St. 1990, c. 150, § 304, repealed §§ 3-6, and § 7 of G. L. c. 123A. At the present time, no person is subject to classification as an SDP, and there can be no new commitments to the treatment center.

shall report the results of his examination in writing to the appropriate commissioner or sheriff, and if such report indicates that such person may be a sexually dangerous person, the appropriate commissioner or sheriff . . . may thereupon transmit the report to the clerk of the courts for the county wherein such prisoner was sentenced . . . together with a motion to commit such person to the center . . . for examination and diagnosis for a period not exceeding sixty days. . . . If the court grants the motion, it shall commit such person under the provisions of section four insofar as may be applicable. . . . If the report of the qualified examiners to the court as required under section five indicates that such prisoner is not a sexually dangerous person, the court shall order such prisoner to be reconveyed to the institution wherein he was serving his sentence, there to be held until the termination of his sentence or until otherwise discharged. If such report clearly indicates that such prisoner is a sexually dangerous person, the clerk shall thereupon notify the court and the district attorney, and the district attorney shall file a petition for commitment of the prisoner to the center . . . for treatment and rehabilitation . . . . [A] hearing shall be conducted in the manner described in section five. . . . If the court finds that the prisoner is not a sexually dangerous person, it shall order him to be reconveyed to the institution wherein he was serving his sentence, there to be held until the termination of his sentence or until otherwise discharged. If the court finds that such prisoner is a sexually dangerous person, it shall commit him to the center, or a branch thereof, for an indeterminate period of a minimum of one day and a maximum of such person's natural life, or it may commit such person to a mental institution or place him upon out-patient treatment, or make such other disposition upon the recommendation of the department of mental health consistent with the purpose of treatment and rehabilitation . . . ."

Statute 1985, c. 752, the legislation that amended G. L. c. 123A, provided in § 4 in relevant part as follows: "[The] provisions of section six of chapter one hundred and twenty-three A of the General Laws shall apply only to persons sen-

tenced for offenses committed on or after the effective date of
this act. Said provisions as they appeared prior to the effec-
tive date of this act shall apply to persons sentenced for of-
fenses committed prior to said effective date." Statute 1985,
c. 752, was approved January 6, 1986, and, therefore, April
6, 1986, was the effective date of the act.

As we have said, the defendant pleaded guilty in October,
1985, to several sexual offenses. Thus, he was sentenced for
offenses committed prior to April 6, 1986, with the result
that, from April 6, 1986, on, as provided by St. 1985, c. 752,
§ 4, the earlier version of c. 123A, § 6, applied to him. Chap-
ter 123A, § 6 (1984 ed.), in relevant part provided: "If a
prisoner under sentence in any jail, house of correction or
prison . . . appears to the sheriff, keeper, master, superinten-
dent or commissioner of youth services who has him in cus-
tody or to the district attorney for the district in which such
prisoner was sentenced to be a sexually dangerous person and
in need of the care and treatment provided at the center,
such officer may notify the commissioner of mental health,
who shall thereupon cause such prisoner to be examined by a
psychiatrist· at the institution wherein he is confined." The
remainder of § 6 (1984 ed.) is substantially the same as the
amended § 6.

There is an important difference between the earlier and
later versions of § 6. Under the earlier version, but not under
the later one, the person in charge of a house of correction
may notify the Commissioner of Mental Health (commis-
sioner) that a prisoner appears to be an SDP, and thus initi-
ate SDP proceedings, *Commonwealth* v. *Purdy*, 408 Mass.
681, 682-684 (1990), even though the prisoner has not en-
gaged in sexually assaultive behavior in prison. That notice
triggers an examination and a report which may lead to a
sixty-day commitment and ultimately to the prisoner's being
committed to the treatment center for life. Therefore, effec-
tive April 6, 1986, the law of this Commonwealth, as pro-
vided in St. 1985, c. 752, was that a prisoner sentenced for a
crime committed after April 6 could not be subjected to an
examination leading to further SDP proceedings without

having engaged in sexually assaultive behavior in prison, but a prisoner, such as the defendant, sentenced for a crime that occurred before April 6, could be subjected to such an examination. It follows that, unless the same situation obtains in this case as obtained in *Commonwealth* v. *Purdy, supra,* which, as we shall discuss momentarily, it does not, St. 1985, c. 752, § 4, created two classes of prisoners, one of which included the defendant and was burdened more than the other. Such classification requires equal protection analysis.

In *Commonwealth* v. *Purdy, supra,* Purdy was an inmate at the Southeastern Correctional Center (SECC). On March 19, 1986, the superintendent of SECC wrote the commissioner requesting a psychiatric evaluation of Purdy pursuant to G. L. c. 123A, § 6 (1984 ed.). Following such an examination, the superintendent petitioned the Superior Court for a hearing to determine whether Purdy should be committed under § 6. Purdy moved to dismiss the petition on the ground that he had not committed a sexual offense while in prison. We determined that Purdy's motion to dismiss, as well as a second such motion, was properly denied. *Id.* at 682-683. Purdy argued to us that "St. 1985, c. 752, § 4, arbitrarily establishes two distinct groups within the prison population, and that members of one may be more easily committed as sexually dangerous persons than members of the other." *Id.* at 684. We responded to Purdy's argument this way: "Regardless of the merit this argument may have with reference to proceedings instituted after the effective date of the amendment, it has none here. On March 19, 1986, the date on which the SECC superintendent commenced c. 123A proceedings against Purdy, all prisoners were subject to the same version of G. L. c. 123A, § 6. At that time, the prison population was homogeneous for purposes of the prerequisites to instituting § 6 proceedings. None of the prisoners on that date could have been incarcerated for crimes committed after the effective date of the amendment, more than two weeks later." *Id.* at 684-685. We concluded in that case that there was "no legal classification sufficient to trigger equal protection analysis." *Id.* at 685. In a footnote, we said: "*Soon*

*after April 6, 1986, the prison population became divided into two groups* for purposes of instituting c. 123A,. § 6, commitment proceedings. For those prisoners serving time for offenses which antedate April 6, 1986, the superintendent of the correctional facility may institute § 6 proceedings based on the mere belief that the prisoner is sexually dangerous. Prisoners incarcerated for later offenses may not have such proceedings instituted against them unless they commit a sexual assault while in custody. Since we hold that a split population did not exist when the instant proceedings were instituted, we do not reach the question whether the division of the prison population established by St. 1985, c. 172, § 4, has a rational basis sufficient to withstand equal protection scrutiny." (Emphasis added.) *Id.* at 684 n.1.

We are satisfied that the SDP proceedings against the present defendant were not instituted before June 11, 1986, and perhaps not until after that date. We held in *Commonwealth v. Purdy, supra* at 682-684, that SDP proceedings were initiated when the prison superintendent notified the commissioner of the need for a psychiatric examination of the defendant pursuant to G. L. c. 123, § 6 (1984 ed.). In the present case, the record fails to disclose whether the superintendent ever notified the commissioner that a psychiatric evaluation was requested, but the record does show that on June 11, 1986, the director of the sexual abuse program at the house of correction notified that institution's medical director that sufficient documentation had been obtained to justify a request for such an evaluation by Dr. Leavitt, and that Dr. Leavitt evaluated the defendant on August 19, 1986, pursuant to an assignment by the department. It is clear, then, that SDP proceedings were initiated at the earliest on June 11, 1986. No psychiatric evaluation was requested before that date and even then the request was not made by a notice to the commissioner as provided by both versions of § 6. Surely, SDP proceedings were not initiated by the mere gathering of documentation preliminary to requesting psychiatric evaluation.

Because the SDP proceedings in this case were not initiated before June 11, 1986, we cannot confidently say, as we said in *Purdy*, *supra* at 684 n.1, that "a split [prison] population did not exist when the instant proceedings were instituted." We must recognize, as we did there, that "[s]oon after April 6, 1986, the prison population became divided into two groups for purposes of instituting c. 123A, § 6, commitment proceedings." *Id.* It would be unfair to require the defendant to show that a statute that was designed to create a split population did not have that effect weeks or months after its effective date, when SDP proceedings against him were initiated. Therefore, unlike the situation in *Purdy*, we must "reach the question whether the division of the prison population established by St. 1985, c. 752, § 4, has a rational basis sufficient to withstand equal protection scrutiny." *Id.*

The Commonwealth argues that "[a]n important difference between the defendant and a prisoner committing a crime subsequent to the amendment's effective date is that a sentencing judge now is cognizant of the limited availability of a []§ 6 motion and therefore will take into consideration the advisability of requesting an SDP evaluation prior to sentencing" pursuant to G. L. c. 123A, § 5. The suggestion appears to be that prisoners like the defendant, who committed preamendment crimes, are no more burdened by c. 123A than prisoners who committed postamendment crimes. The rationale is that, although those who committed postamendment crimes have more protection against SDP proceedings being initiated against them while they are prisoners than those who committed preamendment crimes would have, that difference is compensated for by the fact that judges, recognizing that difference, will initiate proceedings pursuant to § 5 against postamendment criminals more readily than against those who committed preamendment crimes. We reject such speculation and we reject similar contentions made by the Commonwealth which are equally speculative. It is clear that St. 1985, c. 752, results in varying treatment of different classes of prisoners, and that the classification and varying treatment serve no public interest. Under both the

Federal and State Constitutions, *Zeller* v. *Cantu*, 395 Mass. 76, 83-84 (1985) (State and Federal equal protection doctrines equivalent), State action violates equal protection rights if it subjects persons to classification resulting in different treatment, *Commonwealth* v. *Bastarache*, 382 Mass. 86, 96 (1980), and if, as here, there is no rational relationship between the line drawn and a legitimate State interest, *Thompson, petitioner*, 394 Mass. 502, 506-507, 509 (1985). We conclude that St. 1985, c. 752, resulted in a denial of the defendant's right to equal protection of the laws.

The Commonwealth says that, if this court should conclude that the defendant has been denied equal protection, "the appropriate remedy is not the defendant's immediate release but a remand to the [S]uperior [C]ourt for an evidentiary hearing [as to] whether the defendant engaged in sexually assaultive behavior while in custody." We disagree. The defendant has served the consecutive sentences of incarceration that were imposed on him. The record makes clear that the SDP proceedings initiated against him were commenced for the sole reason that he appeared to the superintendent of the Hampden County house of correction to be a sexually dangerous person in need of care and treatment. Applying equal protection principles, we have concluded that that proceeding was unlawfully initiated. The proceeding was a nullity, and now that the defendant has served his sentences he is entitled to be released. He cannot now be proceeded against as a prisoner under G. L. c. 123A, § 6.

The order of commitment is vacated. The case is remanded to the Superior Court for entry of an order that the defendant be released from confinement forthwith.

*So ordered.*