JAMES J. REDGATE, petitioner.

No. 93-P-138.

Suffolk. September 20, 1993. - November 19, 1993.

Present: PERRETTA, KASS, & PORADA, JJ.

Further appellate review granted, 416 Mass. 1111 (1994).

*Sex Offender. Practice, Civil,* Appeal, Sex offender. *Evidence,* Sex offender.

In the circumstances of a prisoner's commitment to the treatment center at Bridgewater as a sexually dangerous person, he was entitled to immediate discharge from that facility to complete his prison sentences, under the authority of *Commonwealth v. Arment*, 412 Mass. 55 (1992). [497-500]

PETITION filed in the Superior Court Department on November 15, 1989.

The case was heard by *Richard F. Stearns*, J.

*Joan C. Stanley* for the petitioner.

*Neil S. Tassel*, Assistant Attorney General, for the Commonwealth.

KASS, J. On the authority of *Commonwealth v. Arment*, 412 Mass. 55 (1992), we decide that James J. Redgate, a prisoner confined to indefinite incarceration as a sexually dangerous person (SDP) in the treatment center at Massachusetts Correctional Institution (M.C.I.), Bridgewater, is entitled to discharge from that facility and return to the general prison population, where he shall serve out the balance of concurrent sentences imposed upon him of eight to ten years at M.C.I., Cedar Junction.[1]

---

[1]Following return of jury verdicts against him, Redgate received two sentences of from twelve to eighteen years and a third sentence of from eight to ten years, the three sentences to run concurrently. After the jury's verdict finding Redgate guilty of rape had been set aside on appeal, see *Commonwealth v. Redgate*, 25 Mass. App. Ct. 965 (1988), leaving convictions of indecent assault of a child under fourteen and assault and battery

Redgate was tried in 1986 on four indictments growing out of a complaint that he had sexually abused the five year old son of his woman friend. Specifically, the indictments were: *first*, indecent assault and battery of a child under the age of fourteen (G. L. c. 265, § 13B); *second*, assault and battery with a dangerous weapon, a lit cigarette (G. L. c. 265, § 15A); the *third* and *fourth* were separate indictments for rape of a child under the age of sixteen (G. L. c. 265, § 22A). As to one of the counts of rape, the trial judge ordered a required finding of not guilty. The jury returned verdicts of guilty on the other three indictments, but the conviction of rape was set aside on appeal (note 1, *supra*), leaving in place only one judgment of conviction of a sexual nature, viz., indecent assault and battery of a child under the age of fourteen.

Sometime after July 31, 1986, the date on which Redgate was sentenced, the superintendent of M.C.I., Gardner, where Redgate had been sent to serve his sentences, moved under G. L. c. 123A, § 6, as appearing in St. 1985, c. 752, § 1, that Redgate be committed to the Bridgewater treatment center for diagnosis as to whether he was an SDP. A judge of the Superior Court, after hearing, found Redgate to be an SDP and committed him to the treatment center for the statutorily prescribed indefinite term of one day to life.[2] As was his right, Redgate on November 15, 1989, filed a petition under G. L. c. 123A, § 9, for examination to determine whether he was still an SDP and for discharge from the

---

by means of a dangerous weapon, Redgate was resentenced to an eight to ten year sentence on each of those charges, the sentences to run concurrently.

[2]Statute 1990, c. 150, § 304, repealed §§ 3, 4, 5, 6, and 7 of c. 123A. The repealed sections include all those which had to do with the determination of persons as SDPs in the first instance, and their commitment to a treatment center for SDPs. The repealer, by St. 1990, c. 150, § 381, became effective September 1, 1990. As of July 1, 1990, no more persons were to be committed to a treatment center for SDPs. St. 1990, c. 150, § 104 and § 383.

treatment center if he were found no longer to be an SDP.[3] That petition, as prescribed in § 9, was heard by a Superior Court judge, who found that Redgate remained an SDP and, therefore, denied the discharge petition. From that denial Redgate has appealed on the ground 1) that he was entitled to discharge from the treatment center on the strength of *Commonwealth* v. *Arment, supra,* and 2) that the evidence received at the § 9 discharge petition hearing did not support a finding that Redgate continued to be an SDP.

1. *Consequences of St. 1985, c. 752, and application of the Arment decision.* Prior to the amendment of G. L. c. 123A, § 6, by St. 1985, c. 752, the director of a correction facility could initiate the process by which a prisoner was determined to be an SDP if a prisoner appeared to the director to be sexually dangerous, even though that prisoner had engaged in no sexual misconduct while incarcerated.[4] The 1985 statute amended § 6 so that the director of a facility could initiate the process by which a prisoner was determined to be an SDP only if that prisoner *had* engaged in sexual misconduct of some kind while incarcerated.[5] The effective date of St. 1985, c. 752, was April 6, 1986, see

---

[3]A person committed to the treatment center may file an examination and discharge petition with the Superior Court once in every twelve months. G. L. c. 123A, § 9.

[4]General Laws c. 123A, § 6, as in effect prior to St. 1985, c. 752, § 1, provided in pertinent part that: "If a prisoner under sentence in any jail, house of correction or prison, or in the custody of the department of youth services, appears to the sheriff, keeper, master, superintendent or commissioner of youth services who has him in custody . . . to be a sexually dangerous person . . . such officer may notify the commissioner of mental health, who shall thereupon cause such prisoner to be examined by a psychiatrist at the institution wherein he is confined."

[5]See G. L. c. 123A, § 6, as appearing in St. 1985, c. 752, § 1, which so far as pertinent, provided that: "If a prisoner under sentence in any jail, house of correction or prison, or in the custody of the department of youth services, *engages in sexually assaultive behavior while under such sentence or in such custody* and appears to the sheriff, keeper, master, superintendent or director of the facility in which he is under sentence or in custody to be a sexually dangerous person . . . such officer may notify the commissioner of mental health, who shall thereupon cause such prisoner to be examined by a qualified examiner at the institution wherein he is confined" (emphasis supplied).

*Commonwealth* v. *Arment*, 412 Mass. at 59. By virtue of § 4
of the 1985 act, the provision requiring sexual misconduct
while incarcerated as a condition for the initiation of SDP
proceedings against a prisoner[6] was to apply only to prisoners
whose offenses were committed on or after the effective date
of the act. The anomalous result of the 1985 legislation was
that it produced a split prison population, consisting of those
prisoners who might be propelled into confinement for life
based on the "mere belief that the prisoner is sexually dan-
gerous," see *Arment* at 61, and those prisoners who could be
started on the road to such lifetime confinement only if they
committed a sexual assault while in custody. *Ibid.*

Such a division of the prison population, the court decided
in *Arment*, bore "no rational relationship between the line
drawn and a legitimate State interest," *Arment* at 63, and,
consequently, deprived of equal protection of the laws under
the Federal and State constitutions those prisoners who could
be started on the road to classification as an SDP on the
mere belief of the officials responsible for their custody. *Ar-
ment* at 62-63. That principle was not to apply to prisoners
against whom SDP proceedings had been initiated prior to
April 6, 1986, because before that date all prisoners were
subject to the "mere belief" criterion. *Commonwealth* v.
*Purdy*, 408 Mass. 681, 682-684 (1990). *Arment* at 59-61.

As to Redgate, then, the determinative question is whether
the SDP proceedings involving him were launched by the su-
perintendent of M.C.I., Gardner (his place of incarceration),
on or before April 5, 1986. Although the document by which
the superintendent took step one of the SDP process (notifi-
cation to the Commissioner of Mental Health that Redgate
appeared to be sexually dangerous) is not in the record ap-
pendix furnished to us, Redgate was not sentenced until
July 31, 1986. It follows, therefore, that the SDP proceed-
ings could only have been begun *after* April 5, 1986. Ac-

---

[6]Neither the *Arment* opinion nor the discussion in this case applies to a
person who was determined to be an SDP under G. L. c. 123A, § 5, i.e.,
prior to imprisonment.

cordingly, Redgate is entitled to be discharged from his confinement as an SDP.

The government's response to this apparently inescapable conclusion is that Redgate ought not to be permitted to press the point on appeal because he did not raise it in the original commitment proceedings under G. L. c. 123A, § 6, or the examination and discharge proceedings under G. L. c. 123A, § 9. To be sure, it is fundamental to our practice that a person may not raise on appeal an issue not called to the trial court's attention. *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 14 (1986), and cases there cited. To that general principle there are five exceptions discussed in the *Miranda* opinion at 15-18. One of those, first announced in 1967, is the exception, to be applied sparingly, that an appellate court may consider a point not made below if failure to do so involves a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). Another exception is called in the *Miranda* opinion at 16 the "clairvoyance exception." It refers to errors of constitutional dimension made when the constitutional principle involved had not been judicially announced, so that it would have required a high level of legal imagination and foresight for defense counsel to have invoked the undeveloped principle. *DeJoinville* v. *Commonwealth*, 381 Mass. 246, 248 (1980) ("presumed intent" charge held to shift burden of proof improperly in criminal cases). *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. at 16. Application of the "clairvoyance exception" presupposes that the new principle has not been limited to prospective effect. *Ibid.*

Here the original court proceedings under G. L. c. 123A, § 6, which resulted in the commitment of Redgate as an SDP for an indefinite period occurred in 1988. The examination and discharge proceedings under § 9 occurred on March 29, 1991; the findings, ruling and order of the Superior Court judge are dated February 18, 1992. The opinion in *Commonwealth* v. *Arment*, 412 Mass. 55, was announced February 27, 1992.

On the chronology we have set out, we think Redgate is entitled to the application of the clairvoyance exception and the *Freeman* exception and is entitled to argue on appeal the principle established in the *Arment* case. It would be a reproach to the justice system and would squander judicial and legal resources to require that Redgate launch still another proceeding (as the Commonwealth in its brief invites him to do) when the relevant facts are known and the result is self-evident.

2. *Whether the record of the § 9 proceedings supports a finding that Redgate continued to be an SDP.* On the view we have taken of the case, we need not decide whether Redgate in his status review under G. L. c. 123A, § 9, was properly determined still to be an SDP. There is an aspect of the § 9 proceedings, however, which is a matter of concern and we express our view should like circumstances recur. Two psychologists examined Redgate, conformably with § 9, and gave their opinions that Redgate was still sexually dangerous. The Commonwealth also introduced testimony at the § 9 hearings from Michael B. Stevens, the chair of the restrictive integration review board.[7]

As a matter of statutory definition, it was necessary for the expert witnesses, if they were to categorize Redgate as an SDP, to identify evidence of "repetitive or compulsive sexual misconduct." G. L. c. 123A, § 1, as appearing in St. 1985, c. 752, § 1. The two psychologists who acted as the "qualified examiners" required by G. L. c. 123A, § 9, as amended by St. 1987, c. 116, appeared to base their conclusions that Redgate was still an SDP on his repetitive sexual misconduct. They drew their assumptions of multiple occasions of sexual misconduct from the charges brought against Redgate. It will be recalled, however, that the judicial process, i.e., trial and appeal, left Redgate convicted of only one sexual offense. If language is to have meaning, the number "one" cannot be translated into "repetitive." One does not make two or three or four. Perhaps an examining psycholo-

---

[7] G. L. c. 123A, §§ 8 and 9.

gist may consider notes of occasions of sexual misconduct that have *not* been the subject of judicial proceedings in assuming that such occasions occurred. A psychologist may not assume an instance of sexual misconduct that, as here, judicial process has determined not to have occurred or been proved.

Throughout his life and particularly while at Bridgewater, Redgate has exhibited alarming social pathology. His language is foul and his temper is explosive. He is engaged in constant conflict with treatment center personnel, verbally abusing them, threatening to kill them, calling them degrading names, and demeaning them. "Fuck you, asshole," seems to be his customary mode of salutation. He exploded shaving cream cans by throwing them out the window. He threw eggs against the walls and garbage in the halls. His therapist in the treatment center observed that Redgate was "in the crisis unit almost all the time." His prison and treatment record, however, is devoid of entries of sexual misconduct and his quite considerable criminal record is similarly free of sexual offenses, except for the one of which he was convicted. While all concerned might understandably want Redgate walled up forever, he is entitled to application of the law, and a dangerous person is not automatically a sexually dangerous one. Cf. *Poulin, petitioner*, 22 Mass. App. Ct. 988 (1986).

The order denying Redgate's petition for discharge from the treatment center is vacated, and a new order is to enter that he shall be discharged from the treatment center and shall be transferred to a correctional facility where he may serve the balance of his concurrent sentences of from eight to ten years at M.C.I., Cedar Junction.

*So ordered.*