## COMMONWEALTH *vs.* NAPOLEAN L. CREPEAU, JR.

Bristol. March 3, 1998. - May 7, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & IRELAND, JJ.

*Sex Offender. Constitutional Law,* Equal protection of laws, Sex offender. *Evidence,* Sex offender.

No statutory or other basis existed for detaining a defendant, committed to the treatment center for sexually dangerous persons under G. L. c. 123A, § 6, where the defendant's sentence for the underlying rape offense had expired, and where the Commonwealth could not demonstrate, either now or as of the time of the defendant's commitment in 1989, under principles made applicable by the decision of this court in *Commonwealth* v. *Arment,* 412 Mass. 55, 56-57 (1992), that the defendant had engaged in "sexually assaultive behavior" while serving his sentence so as to justify the commitment. [412-413]

INDICTMENT found and returned in the Superior Court Department on August 3, 1982.

A motion for a new trial, filed on August 15, 1996, was heard by *Vieri Volterra,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Shaun S. McLean,* Special Assistant District Attorney, for the Commonwealth.

*Mark J. Gillis* for the defendant.

WILKINS, C.J. A Superior Court judge ruled that the Commonwealth had no right under G. L. c. 123A, § 6, to continue to hold the defendant in the treatment center for sexually dangerous persons. The judge ordered that the defendant, who had completed serving his criminal sentence, be released from the treatment center. The Commonwealth appealed, and we granted its application for direct appellate review.

In 1983, the defendant pleaded guilty to rape and was sentenced to serve a sentence of from twelve to fifteen years.[1]

---

[1]He completed serving the sentence in April, 1996.

In late 1987, the superintendent of Bridgewater State Hospital requested that the Commissioner of the Department of Mental Health arrange for an examination of the defendant to determine if he was sexually dangerous. After receiving the report of an initial examination, the superintendent of the Southeastern Correctional Center moved for the defendant's commitment to the treatment center for sexually dangerous persons. In April, 1989, after the defendant waived a hearing on his sexual dangerousness, a judge found that, pursuant to G. L. c. 123A, § 6, the defendant was a sexually dangerous person and committed him for an indeterminate period to the treatment center.

There have been changes in the law governing the right of the Commonwealth to hold the defendant as a sexually dangerous person. Section 6 of G. L. c. 123A, as amended through St. 1978, c. 478, § 72, applicable to the defendant at the time of his 1989 commitment to the treatment center, permitted the person with custody of the defendant to initiate an examination if the defendant appeared "to be a sexually dangerous person and in need of the care and treatment provided at the center." Although § 6 had been amended prior to the defendant's commitment in 1989, the amendment was inapplicable to persons, such as the defendant, who had been sentenced before the effective date of the amendment. See St. 1985, c. 752, §§ 1 & 4.

The 1985 amendment to G. L. c. 123A, § 6 (St. 1985, c. 752, § 1), changed the conditions for beginning the process of committing a subsequently convicted defendant to the treatment center. Under that amendment, the person with custody of the prisoner could initiate proceedings only if the prisoner "engage[d] in sexually assaultive behavior while under such sentence," even if the prisoner otherwise appeared to be a sexually dangerous person. The consequence of the prospective amendment of § 6 was to create two classes of prisoners for the purposes of determining sexual dangerousness.

In *Commonwealth* v. *Arment*, 412 Mass. 55, 56-57 (1992), we considered an equal protection argument advanced by a defendant who was subject, as is the defendant in the case before us, to the terms of the prior law. We held that the 1985 act "results in varying treatment of different classes of prisoners, and that the classification and varying treatment serve no public interest." *Id.* at 62. The act thus denied Arment the right to equal protection of the laws. *Id.* The consequence of our decision was that all prisoners, whether convicted before or

after the 1985 act, were subject to procedures for determining whether they were sexually dangerous persons only if they engaged in sexually assaultive behavior while under sentence.

The proceeding against the defendant commenced before our decision in the *Arment* case. The Commonwealth cannot be faulted, therefore, for not alleging, at the time of the defendant's 1989 commitment, that he had engaged in sexually assaultive behavior while in prison. Similarly, the defendant had no reason to challenge the omission, and he did not waive the right to assert his current claim that he is entitled to the benefit of the *Arment* decision. See *Redgate, petitioner,* 417 Mass. 799, 802 (1994). The significance of the equal protection point had not yet been established. *Id.*

Once the significance of our *Arment* and *Redgate* opinions became apparent, the defendant moved for a new trial, asserting that he was being held unlawfully. The defendant is in substantially the same position as was the defendant in the *Arment* case. He has served his sentence; proceedings were initiated against him solely because he appeared to the superintendent to be a sexually dangerous person. See *Commonwealth* v. *Arment, supra* at 63. The Superior Court judge, relying on our *Arment* decision, ordered that the defendant be released. During the Commonwealth's appeal, several orders have been entered that have stayed the order of release.

The Commonwealth argues that it should have the opportunity to show that the record it would have developed in 1989, when the defendant waived a hearing on his sexual dangerousness, would have demonstrated that the defendant did engage in sexually assaultive behavior while in custody. It relies on evaluations of the defendant available in 1987. During one 1987 evaluation, pursuant to G. L. c. 123, § 18A, the defendant, who had attempted suicide, reported that he had powerful feelings about attacking women sexually and that he had raped women in addition to the victim of the crime to which he had pleaded guilty. He said that he felt that he had to act out aggressive and sexual feelings or kill himself. In examinations shortly before the 1989 order that committed the defendant to the treatment center, two physicians examined him and concluded that he was a sexually dangerous person. One doctor based his conclusion on the fact that the defendant, for six or seven years, had had overwhelming urges to rape and beat women. He could have been fabricating his statements, but because he was eligible for parole, it was difficult for the doctor to understand why he would do so.

The Commonwealth's argument fails, even if it is timely to assert now that there were grounds for holding the defendant under the principles made applicable to him by the *Arment* decision. The defendant's statements simply are not sexually assaultive behavior. Because the defendant's statements are not behavior that is sexually assaultive, there was no basis on which the superintendent could have reasonably concluded in 1987 (or at any other time) that the defendant had engaged in sexually assaultive behavior that would justify initiating the process that might lead to a determination that he was a sexually dangerous person. Two opinions have suggested what sexually assaultive behavior may be. See *Commonwealth* v. *Arment, supra* at 61 ("a sexual assault while in custody"); *Redgate, petitioner*, 35 Mass. App. Ct. 495, 497 (1993), *S.C.*, 417 Mass. 799 (1994) ("sexual misconduct of some kind while incarcerated"). Words in conjunction with threatening conduct might be sexually assaultive behavior. The defendant's statements standing alone, however, were not sexually assaultive behavior, although they may have been threats to engage in sexually assaultive behavior.

Section 6 and other sections of G. L. c. 123A were repealed by St. 1990, c. 150, § 304, and what sexually assaultive conduct may be seems no longer important. The larger question remains, however, whether there is or should be a means of detaining a person who credibly threatens to assault others if given a chance. If there is no statutory basis for detaining such a person on a civil commitment, new legislation may be in order. See *Kansas* v. *Hendricks*, 117 S. Ct. 2072 (1997).

The order directing the release of the defendant is affirmed.

*So ordered.*