Donohue, J.
On March 24, 1984, petitioner Edward' Brown entered a plea of guilty to multiple counts of Soliciting a Child to Pose for Pornographic Purposes and Rape of a Child. On May 14, 1984, Justice Travers found petitioner to be a “sexually dangerous person” pursuant to G.L.c. 123A and committed him, in lieu of a criminal sentence, to the Massachusetts Treatment Center for a term of not less than one day and not more than his natural life.
Brown now brings this pro se petition for habeas corpus challenging his confinement to the Treatment Center. Petitioner asserts numerous arguments in support of his challenge. Respondent seeks dismissal of the suit. For the reasons stated below, respondent’s motion to dismiss is ALLOWED.

DISCUSSION

After a thorough review of petitioner’s affidavit and memorandum of law, the court determines that petitioner raises the following claims:
1. EQUAL PROTECTION
Petitioner first argues that a 1990 amendment to G.L.c. 123A, which closed the treatment center to new commitments, violates the equal protection clause of the United States Constitution. Petitioner claims that the amendment unconstitutionally creates two classes of prisoners who committed sex crimes — one subject to an indefinite term in the center who must file for a hearing and prove they are no longer sexually dangerous to be released and the other serving definite sentences. In Commonwealth v. Tate, 424 Mass. 236 (1997), the Supreme Judicial Court rejected the identical argument finding that ”[e]qual protection principles do not bar the continuation of the treatment program for persons already in it just because the *427 Legislature terminated future commitments.” Id. at 241. Thus, petitioner’s claim is without merit.
Petitioner next argues that G.L.c. 123A violates the equal protection clause because it treats male and female sex offenders differently. Petitioner contends that G.L.c. 123A is only enforced against male sex offenders.
A widely disproportionate impact on the plaintiff class is not enough to establish an equal protection violation. Hayden v. Grayson, 134 F.3d 449, 453 (1st Cir. 1998). In order to establish a violation, the plaintiff must prove purposeful discrimination. Personnel Adm’r of Mass. v. Feeney, 442 U.S. 256, 274 (1979). Petitioner fails to assert any specific facts indicating purposeful discrimination. Thus, petitioner’s claim is without merit.
2. DUE PROCESS
Petitioner first argues that his commitment violates his substantive due process rights under the United States Constitution because his confinement is based solely on a finding of dangerousness. The argument is without merit.
In Kansas v. Hendricks, 521 U.S. 346 (1997), the Supreme Court upheld a state statute which provided for the civil commitment of “sexually dangerous predators.” Under the Kansas law, a sexually dangerous predator was defined as “any person who has been charged with a sexually violent offense who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence.” Hendricks, 521 U.S. at 352. The Court found that the Kansas statute did not violate substantive due process as it required that any determination of dangerousness be coupled with proof of some additional factor, such as mental illness. The terminology contained in the legislation, for example the use of the phrase “mental abnormality” in the statute as opposed to the term “mental illness,” was not dispositive and the Court noted that “this Court has never required States to adopt any particular nomenclature in drafting civil commitment statutes and leaves to the States the task of defining terms of a medical nature that have legal significance.” Id. at 359.
G.L.c. 123A, §1 defines a sexually dangerous person as
[a]ny person whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive behavior and with violence, or aggression by an adult against a victim under the age of sixteen years, and who as a result is likely to attack or otherwise inflict injury on the objects of his uncontrolled or uncontrollable desires.[1]
Under the terms of section one, then, a person is determined to be sexually dangerous only after taking into account the individual’s “general lack of power to control. .. sexual impulses,” “repetitive or compulsive behavior,” and violence or aggression toward ayoung victim, as well as the underlying sexual misconduct By the very terms of the statutory definition, the court considers the petitioner’s mental status with regard to his ability to control and appropriately channel his aggressions. Before reaching a conclusion based on just these considerations, however, c. 123A mandates that the court follow the specific procedure outlined in §§4 and 5.
First, following a conviction of one of the offenses named in the statute, the court commits the offender to the treatment center for a period of no more than sixty days for the purpose of examination and diagnosis by at least two psychiatrists. The psychiatrists shall then file a written report and recommendation for disposition with the court. G.L.c. 123A, §4, repealed by St. 1990, c. 150, §304. Second, “[i]f the report filed with the court under section four clearly indicates that such person is a sexually dangerous person, the court shall give notice to such person that a hearing will be held to determine whether or not he is a sexually dangerous person.” G.L.c. 123A, §5, repealed by St. 1990, c. 150, §304. After a hearing, during which the offender is entitled to counsel and has the right to introduce evidence, if the court finds that the offender is sexually dangerous then the court may commit the person to the treatment center for an indeterminate period of time in lieu of a sentence. Id. If the individual is not found to be a sexually dangerous person, then the court will impose a sentence appropriate to the underlying offense.
When the court acts in accordance with the statutory procedure outlined above, it is clear that there are many factors which are taken into consideration prior to any final determination of sexual dangerousness. Focusing merely on the statutory definition of a sexually dangerous person is misleading because, on its face, it appears that one can be determined to be sexually dangerous solely on the fact that the person has engaged in certain repetitive behavior. However, if one examines the statute as a whole, and in particular notes the procedures which the state must follow before arriving at the conclusion that someone is a sexually dangerous person, it is clear that one cannot be adjudged a sexually dangerous person based purely on the acts which have been committed.
The misconduct of the offender plays a part in the deliberations, but it is only one component of the decision. The court also has before it the reports and evaluations of qualified psychiatrists and any evidence and testimony which was introduced at the trial. Psychiatry is the branch of medicine which deals with the study and treatment of mental illness and any diagnosis made by the evaluating psychiatrists is a determination of the nature of the individual’s disease or illness. The testimony and written reports of the evaluating psychiatrists certainly speak to the issue of whether the petitioner suffers from a mental abnormality which warrants commitment. The conclusions made in these reports are clearly factored into the court’s decision at the commitment hearing.
*428 This combination of evidence which is evaluated by the court is sufficient to overcome any possible constitutional prohibition against committing persons who do not suffer from a mental abnormality. Accordingly, the petitioner is incorrect in his contention that commitment under G.L.c. 123A requires only a finding of dangerousness. Dangerousness is inferred from the petitioner’s sexual misconduct, but the repetitiveness and violence of his actions, along with the evaluations conducted by qualified psychiatric professionals, are significant factors which allow the court to ascertain whether or not the petitioner should be committed to the treatment center.
Thus, the court finds that G.L.c. 123A, analyzed in light of Kansas v. Hendricks, does not violate substantive due process.
Petitioner next argues that a 1993 amendment to G.L.c. 123A which transferred control of the treatment center from the Department of Mental Health to the Department of Corrections, converted his civil commitment into a criminal punishment denying him due process of law. This argument was rejected by the Supreme Judicial Court in Tate, 424 Mass. 236. In Tate, the Court found that because the defendant had not shown “that the treatment center lack[ed] continued viability as a place where sexually violent offenders can receive nonpunitive psychiatric treatment,” his due process argument failed. Id. at 239. In this instance, petitioner has also failed to make this showing, thus his due process argument also fails.
3.DOUBLE JEOPARDY/EX POST FACTO/BILL OF ATTAINDER
Petitioner argues that the 1993 amendment transferring control of the treatment center to the Department of Corrections, converted his civil commitment into a criminal punishment in violation of the constitutional prohibition against double jeopardy, ex post facto punishment and bills of attainder. These claims are without merit.
The commitment statute has a remedial, nonpunitive purpose. Hill, petitioner, 422 Mass. 147, 153-54 (1996). Although control of the center was transferred from DMH to DOC, the legislature required the DOC to “maintain ... a treatment program ... at a correctional institution for the care, custody, treatment and rehabilitation of persons adjudicated as being sexually dangerous.” St. 1993, c. 489, §2, G.L.c. 123A, §2. This is the same set of goals that guided the treatment center program at the time of petitioner’s commitment when the center was under the leadership of DMH. The mere fact of the transfer of authority over the center from DMH to DOC does not convert the petitioner’s civil commitment to criminal punishment. See Allen v. Illinois, 478 U.S. 364, 372-74 (1986); Tate, 424 Mass. 236,238-39 (1997).
Thus, since G.L.c. 123A proceedings are not punitive in nature, petitioner’s commitment does not violate the prohibition against double jeopardy, ex post facto punishment and bills of attainder. See Kansas v. Hendricks, 521 U.S. 346, 370 (ex post facto clause pertains exclusively to penal statutes); Selective Ser. Sys. v. Minn. Public Int. Research, 468 U.S. 841, 851 (1984) ("The proscription against bills of attainder reaches only statutes that inflict punishment on the specified individual or group”); Tate, 424 Mass, at 239 n.4 (plaintiffs double jeopardy claim rejected because of failure to show commitment to treatment center was penal).
4.RIGHT TO ANNUAL DISCHARGE PROCEEDING
Petitioner argues that all procedural rights granted to persons under G.L.c. 123 are extended to persons committed to the treatment center under G.L.c. 123A. Thus, petitioner contends, he is entitled to an annual discharge hearing as provided for in G.L.c. 123. Petitioner further asserts that pursuant to G.L.c. 123A, §9 he has a right to an annual discharge hearing. Petitioner’s claims are without merit.
An argument similar to that first advanced by petitioner was rejected in Thompson, petitioner, 394Mass. 502 (1985). The Thompson Court held that because confinement at the treatment center under G.L.c. 123A and civil commitment to Bridgewater State Hospital under G.L.c. 123, did not have “generally similar functions and effects,” the procedural differences between the statutes were justified. Id.; see also Commonwealth v. Davis, 407 Mass. 47, 51 (1990); Lund, petitioner, 35 Mass.App.Ct. 908 (1993). Thus, petitioner is not entitled to an annual discharge hearing as provided for in G.L.c. 123.
Furthermore, under G.L.c. 123A, §9, petitioner is entitled to “file a petition for examination and discharge once in eveiy twelve months . . .” This section “does not set an express time limitation within which the court must hold a reexamination hearing.” Trimmer, petitioner, 375 Mass. 588, 590 (1978). “The one year period ... fixes a limitation on the number of hearings which [petitioner] may request.” Id. Thus petitioner’s argument that he is entitled to an annual discharge hearing under G.L.c. 123A, §9 is also without merit.
5.FALSE IMPRISONMENT
Petitioner argues that he has been falsely imprisoned in the treatment center since the transfer of its control to the Department of Corrections. False imprisonment is a tort and is not the type of claim properly raised in a petition for habeas corpus. See Hennessy v. Superintendent, MCI-Framingham, 386 Mass. 848, 850-51 (1982) (habeas corpus relief available to individual seeking remedy for events occurring after conviction and who would be entitled to immediate release upon successful petition).

ORDER

For the foregoing reasons, it is hereby ordered that Respondent’s motion to dismiss Edward Brown’s Petition for habeas corpus is ALLOWED.

 As the petitioner is challenging the constitutionality of G.L.c. 123A as it applied to his initial commitment as a sexually dangerous person, the court is called upon to construe c. 123 A as it was in effect at the time of his commitment.