EDWARD L. QUEGAN *vs.* MASSACHUSETTS PAROLE BOARD.

Suffolk. September 9, 1996. - December 5, 1996.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Moot Question. Practice, Civil,* Moot case, Assistance of counsel, Standing. *Parole. Due Process of Law,* Parole. *Constitutional Law,* Parole, Self-incrimination.

This court undertook to discuss a moot issue that was likely to recur, was of general importance and was fully briefed. [835-836]

The Massachusetts Parole Board's consideration of a prisoner's refusal to admit his guilt of the crimes for which he was sentenced, in making a decision on whether to grant the prisoner parole, did not implicate Federal or State due process protections, where a prisoner does not have a constitutionally protected liberty interest in receiving parole and where such consideration was not arbitrary or unfair. [836-837]

The denial of parole, in part for a prisoner's inability, failure or refusal to take responsibility for the wrongdoing for which he had been sentenced to prison, is not a penalty, and the prisoner is not being compelled to furnish evidence against himself in such proceedings in violation of his Federal or State privilege against self-incrimination. [837-838]

The Massachusetts Parole Board had no standing to seek the disqualification of the Committee for Public Counsel Services from representing a prisoner who was denied parole seeking declaratory relief on account of alleged unconstitutional actions of the board. [838-839]

The public counsel division of the Committee for Public Counsel Services (CPCS) has no right to represent an indigent prisoner before the parole board, unless there is a criminal proceeding pending in which CPCS represents the prisoner and representation of the prisoner-defendant before the parole board is appropriate in order to protect the defendant's interests in the pending criminal matter. [839-840]

CIVIL ACTION commenced in the Superior Court Department on June 13, 1994.

The case was heard by *Patrick J. King,* J., on a motion to dismiss, and a motion to disqualify counsel was heard also by him.

The Supreme Judicial Court granted an application for direct appellate review.

*Benjamin H. Keehn,* Committee for Public Counsel Services, for the plaintiff.

*R. Michael Cassidy*, Assistant Attorney General, for the Massachusetts Parole Board.

*Patricia Garin, Martin Gideonse, Joel Thompson & John Cashion*, for Northeastern School of Law Prisoners' Assistance Project & another, amici curiae, submitted a brief.

WILKINS, C.J. A Superior Court judge dismissed the complaint of the plaintiff (Quegan) which, as amended, sought a declaration that the defendant, Massachusetts Parole Board (board), in deciding whether to grant Quegan parole, may not consider his refusal to admit his guilt of the crimes for which he was sentenced.[1] Quegan appealed. The board has appealed the denial of its motion to disqualify the Committee for Public Counsel Services (CPCS) from representing Quegan. We allowed Quegan's application for direct appellate review.

The complaint alleged that Quegan appeared before a parole hearing panel (see 120 Code Mass. Regs. § 301.07 [1993]) for an initial parole release hearing on September 2, 1993, where, when asked, he denied having committed the offenses for which he had been incarcerated. Quegan was denied parole, for the following reason:

> "[A]lthough Mr. Quegan was tried and found guilty he does not take any responsibility for his offense toward his five year old daughter. The Board noted that Mr. Quegan claims innocence and is currently seeking relief through the courts. Mr. Quegan also stated that he attends sex offender counseling only to prevent a return to high security. The panel felt that Mr. Quegan showed no insight into his behavior."

Quegan appealed the decision administratively, and the board denied the appeal on the stated ground that Quegan "had committed a serious offense and was at a high risk to reoffend." On appeal, the board did not rely on, or even discuss, the reasons given for denial of parole by the initial parole hearing panel.

1. Quegan argues that the denial of parole because a prisoner maintains his innocence violates rights protected by the United States Constitution and the Constitution of the Commonwealth. The board responds first that we should not discuss the merits of Quegan's claim because the controversy

---

[1]Quegan's convictions were affirmed in *Commonwealth* v. *Quegan*, 35 Mass. App. Ct. 129 (1993).

is moot. We agree that the controversy is moot. See *Commissioner of Correction* v. *Ferguson*, 383 Mass. 651, 653-654 (1981); *Blake* v. *Massachusetts Parole Bd.*, 369 Mass. 701, 706-707 (1976). In June, 1996, a Superior Court judge granted Quegan a new trial on the criminal charges on which he was sentenced, and he has been released from custody. The Commonwealth, however, has appealed the allowance of the motion for a new trial. If the Commonwealth succeeds in its appeal, the issue of the board's right to consider Quegan's unwillingness to admit his guilt could again become a live issue. The basic question presents an issue, in any event, that is likely to recur, is of general importance, and has been fully briefed. In our discretion, we elect to discuss it. Cf. *Ott* v. *Boston Edison Co.*, 413 Mass. 680, 683 (1992).

2. Quegan advances two constitutionally based challenges to the board's right to deny a prisoner parole on the ground that he maintains his innocence. One claim is that it violates due process of law to deny parole because a prisoner will not admit his guilt of the crime for which he is serving a sentence. The other claim is that a denial of parole because a prisoner maintains his innocence penalizes him for exercising his constitutional rights to be free from compelled self-incrimination.

Quegan has no effective due process of law argument. Federal due process protections are inapplicable because Quegan does not have a constitutionally protected liberty interest in receiving parole. See *Greenholtz* v. *Inmates of the Neb. Penal & Correctional Complex*, 442 U.S. 1, 9-11 (1979); *Greenman* v. *Massachusetts Parole Bd.*, 405 Mass. 384, 388-389 n.3 (1989); *Commonwealth* v. *Hogan*, 17 Mass. App. Ct. 186, 191 (1983). Nothing in *Sandin* v. *Conner*, 515 U.S. 472 (1995), calls for a different conclusion. While art. 12 of the Massachusetts Declaration of Rights might extend greater procedural protections to Quegan than does the Federal Constitution (see *Lanier* v. *Massachusetts Parole Bd.*, 396 Mass. 1018, 1019 [1986]), consideration in a parole decision of a prisoner's acknowledgment of his wrongdoing or of his refusal to acknowledge his guilt is not arbitrary or unfair. Cf. *United States* v. *De Leon Ruiz*, 47 F.3d 452, 455-456 (1st Cir. 1995) (consideration in sentencing of a defendant's pretrial responsibility for his offense where defendant pleaded guilty, but no consideration of a postconviction acknowledgment of responsibility after a guilty finding, presents tough choice for

defendant "but it is not unconstitutional"). The Legislature has indicated that, among the relevant considerations for the parole board, is "how the prisoner then regards the crime for which he is in prison." G. L. c. 127, § 136 (1994 ed.). It must be remembered that, although the system is not infallible, a jury found such a prisoner guilty beyond a reasonable doubt.

Certainly, a prisoner's acknowledgment of guilt would be a relevant factor in deciding whether the prisoner is likely to be rehabilitated. The absence of such an acknowledgment provides no weight on the scale in favor of parole, and thus, in a sense, has a negative effect on a prisoner's parole application. We leave to a later case, if it should ever arise, the question whether due process forbids denial of parole solely because a prisoner, who was otherwise fully qualified for release on parole, did not acknowledge his guilt. In *Commonwealth* v. *Fernandes*, 390 Mass. 714, 715 n.1 (1984), the court questioned the wisdom and fairness of any practice that denied parole because a prisoner maintained his innocence. That is not what the board relied on in rejecting Quegan's administrative appeal. Rather, the board's decision implicitly rejected the reasoning of the initial parole release hearing panel.

Quegan argues that a requirement that a prisoner take responsibility for his wrongdoing, before the board will grant him parole violates the prisoner's privilege against self-incrimination under the Fifth Amendment to the Constitution of the United States and art. 12. He points out that, if a prisoner were to admit his guilt, he would be prejudicing his position if a judge were to grant him a new trial. Indeed, if he were to admit guilt he could well prejudice any attempt to obtain a new trial.

The problem with Quegan's argument is that the denial of parole has not been viewed as a penalty for Fifth Amendment purposes. Hence, a prisoner who is denied parole is not punished for his unwillingness to admit his guilt. The result of Quegan's unwillingness would be that he would continue to serve the sentence already imposed. The prohibition against imposing substantial penalties because a person has elected to exercise his Fifth Amendment right not to give incriminating testimony against himself (see *Minnesota* v. *Murphy*, 465 U.S. 420, 434 [1984]), has no application in these circumstances. See, e.g., *United States* v. *Hull*, 792 F.2d 941, 943 (9th Cir.

1986) (denial of probation because defendant did not express remorse did not punish her for exercising her Fifth Amendment right against self-incrimination); *Gollaher* v. *United States*, 419 F.2d 520, 530-531 (9th Cir.), cert. denied, 396 U.S. 960 (1969) (Fifth Amendment right not infringed where defendant, who insisted on innocence, was "unwilling to take the first step toward rehabilitation" and was sentenced accordingly); *Knowles* v. *Warden, N.H. State Prison*, 140 N.H. 387 (1995) (prisoner, who declined to participate in sexual offender program because to do so required him to admit guilt, not compelled to participate in program and hence privilege against self-incrimination not violated). Cf. *Paz* v. *Warden, Fed. Correctional Inst., Englewood, Colo.*, 787 F.2d 469, 473 (10th Cir. 1986) ("We recognize that an offender's inability to accept responsibility for the wrongfulness of his conduct may properly be considered by the Parole Commission in determining that the offender has not been rehabilitated"). Opinions concerning the loss of liberty because of revocation of parole present a different free speech issue. See *Greenholtz* v. *Inmates of the Neb. Penal & Correctional Complex*, 442 U.S. 1, 9 (1979) ("There is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires"); *Knowles* v. *Warden, N.H. State Prison, supra* at 976-977.

We have held that art. 12 requires a recognition of greater rights than does the Fifth Amendment. *Attorney Gen.* v. *Colleton*, 387 Mass. 790, 796 (1982). Unlike the Fifth Amendment, that article expressly refers to compulsion to furnish evidence against oneself. The pressure on a prisoner seeking parole to admit responsibility for his crime does not compel the prisoner to admit his guilt. He may elect either not to seek parole or to seek parole and not admit his guilt. In neither case is he compelled to furnish evidence against himself. See *Mello* v. *Hingham Mut. Fire Ins. Co.*, 421 Mass. 333, 339 (1995). The indirect pressure on a prisoner to admit his guilt, although he maintains his innocence and is in fact innocent, is not a compulsion against which art. 12 provides protection.

3. We come now to the board's appeal from the denial of its motion to disqualify the public counsel division of CPCS from representing Quegan. The board asserts that, because Quegan has no constitutional or statutory right to counsel in

this action, CPCS lacks statutory authority to represent Quegan in this action.

The board has no standing to seek the removal of CPCS on the ground stated. See *Slama* v. *Attorney Gen.,* 384 Mass. 620, 623-624 (1981). Moreover, the board's motion to disqualify CPCS did not challenge CPCS's right to represent Quegan in seeking non-monetary relief. The motion to disqualify CPCS alleged that Quegan had "no constitutional or statutory right to court-appointed counsel in a civil action for money damages against the Commonwealth." At the time that the judge denied the board's motion to disqualify CPCS, CPCS had amended its complaint to omit any request for money damages, costs, or attorney's fees.

We comment on the authority of CPCS to represent individuals because the issue will no doubt arise again. Section 5 of G. L. c. 211D (1994 ed.) requires that CPCS maintain a system for the appointment of counsel for indigents in any proceeding, criminal or civil, in which "the laws of the commonwealth or the rules of the supreme judicial court require that a person in such proceeding be represented by counsel." CPCS relies on G. L. c. 211D, § 6 (*b*) (iii), which provides, in part, that the private counsel division shall "be assigned to represent persons in such other proceedings [other than certain criminal cases and certain cases in the Probate and Family Court or Housing Court] as the chief counsel shall determine to be necessary." The board argues that the chief counsel's authority under § 6 (*b*) (iii) is limited by the introductory phrase of § 6 that states that § 6 concerns CPCS's obligation "[i]n carrying out its duties as prescribed in section five." It is unclear whether that introductory phrase in § 6 applies to (*b*) (iii). It certainly does not lead into (*b*) (iii) in a grammatically appropriate way. It is, however, the public counsel division and not the private counsel division that has represented Quegan.

The public counsel division of CPCS may "represent indigent defendants in all appeals and related post-conviction remedies" (G. L. c. 211D, § 14), even if representation is not required by law or court rule. It has been customary for CPCS to represent indigent criminal defendants in motions for new trials (see Mass. R. Crim. P. 30 [c] [5], 378 Mass. 900 [1979]; *Commonwealth* v. *Conceicao,* 388 Mass. 255, 262-264 [1983]), sentence appeals, motions to revise and revoke

sentences, and proceedings under G. L. c. 211, § 3 (1994 ed.), seeking to invoke the general superintendency of this court. See, e.g., *Jenkins* v. *Chief Justice of the Dist. Court Dep't,* 416 Mass. 221 (1993). CPCS has no right, however, to represent an indigent prisoner before the parole board unless there is a criminal proceeding pending in which CPCS represents the prisoner and representation of the prisoner-defendant before the parole board is appropriate in order to protect the defendant's interests in the pending criminal matter.

The judgment dismissing the complaint is affirmed. The order denying the board's motion to disqualify the Committee for Public Counsel Services from representing the plaintiff is affirmed.

*So ordered.*