Steven Smith[1] vs. Sex Offender Registry Board.

No. 04-P-969.

Barnstable. November 9, 2005. - March 24, 2006.

Present: Armstrong, C.J., Smith, & Mills, JJ.

*Sex Offender Registration and Community Notification Act. Practice, Civil,* Sex offender. *Administrative Law,* Agency's interpretation of regulation, Judicial review, Regulations. *Constitutional Law,* Equal protection of laws.

This court concluded that there was sufficient evidence to support the conclusion of the Sex Offender Registry Board (board) that the plaintiff, who had pleaded guilty to an indictment for indecent assault and battery on a person age fourteen or over, be required to register as a level one sex offender, where the plaintiff minimized his offense and failed to acknowledge his criminal responsibility; moreover, the hearing examiner's detailed written decision, on which the board's conclusion was based, was balanced and fair in weighing the factors outlined in the relevant regulations, 803 Code Mass. Regs. § 1.40 (2002). [809-813]

There was no merit to the plaintiff's claim that the application of the Sex Offender Registration and Community Notification Act, G. L. c. 6, §§ 178C-178P, to his circumstances deprived him of the equal protection of the law. [813-815]

Civil action commenced in the Superior Court Department on May 23, 2003.

The case was heard by *Gary A. Nickerson*, J., on motions for judgment on the pleadings.

*Peter M. Onek*, Committee for Public Counsel Services, for the plaintiff.

*Daniel A. Less*, Special Assistant Attorney General (*William A. Looney* with him) for the defendant.

Mills, J. A Superior Court judge, on the plaintiff's appeal pursuant to G. L. c. 30A, § 14, and G. L. c. 6, § 178M, affirmed the final decision of the sex offender registry board

---

[1] A pseudonym.

(board), to classify him as a level one (low risk) sex offender under the Sex Offender Registration and Community Notification Act, G. L. c. 6, §§ 178C-178P (act), and 803 Code Mass. Regs. §§ 1.01 et seq. (2002). In this appeal the plaintiff argues that the judge incorrectly affirmed the board's classification because (1) the board had abused its discretion in analyzing the record where there was insufficient evidence to meet the "substantial evidence" test; and (2) the plaintiff's rights to equal protection under the Fourteenth Amendment and art. 1 of the Massachusetts Declaration of Rights were violated where a 1999 amendment to G. L. c. 6, § 178E(*f*), see St. 1999 c. 74, § 2, was not retroactively available to him. We affirm.

1. *Procedural background.* Upon an indictment for rape and abuse of a child under the age of sixteen (G. L. c. 265, § 23), and indecent assault and battery on a person age fourteen or over (G. L. c. 265, § 13H), the Commonwealth entered a nolle prosequi for so much of the indictment as charged more than the indecent assault and battery, and on June 24, 1996, the plaintiff pleaded guilty and was sentenced to a three-year term of probation, which he successfully concluded.

In April, 2002, the board notified the plaintiff of its recommendation that he be required to register as a level one sex offender. He requested and then received an administrative hearing, which was held on January 3, 2003, pursuant to G. L. c. 6, § 178L, after which an examiner issued a twenty-two page decision concluding that the plaintiff was required to so register.[2]

The plaintiff sought review in the Superior Court, where the judge denied the plaintiff's motion for judgment on the pleadings. In his decision the judge discounted some of the hearing examiner's positive determinations as to the credibility of the victim, who had not testified at the hearing, but nevertheless concluded that there was sufficient evidence to support the board's decision.

2. *The statute and regulations pertinent to the appeal.* The board, established by G. L. c. 6, § 178K, is responsible for identifying, classifying, and, in some cases, publishing identification data of persons convicted of specific sexual

---

[2]This decision is considered the final agency action. 803 Code Mass. Regs. 1.23.

offenses. The board has the authority to promulgate guidelines for determining a sex offender's risk of reoffense and degree of dangerousness posed to the public, for granting relief from the obligation to register, and for establishing three levels of notification. The board has promulgated specific guidelines for each of the factors specified by the Legislature in G. L. c. 6, § 178K(1)(a)-(l).[3] See 803 Code Mass. Regs. § 1.40(1)-(24). Sections 178K-178M of the act, the Administrative Procedure Act, G. L. c. 30A, § 14, and the regulations, 803 Code Mass. Regs. §§ 1.00-1.41, contain, in addition to the guidelines, detailed procedures, requirements, and safeguards, including judicial review, of the classification process. We will discuss such portions of the statute and regulations as are applicable to our determination of this appeal.

3. *The hearing before the examiner.* After notification of the

---

[3]Those factors are (1) "whether the sex offender has a mental abnormality"; (2) "whether the offender's conduct is characterized by repetitive and compulsive behavior"; (3) "whether the sex offender was an adult who committed a sex offense on a child"; (4) "the age of the sex offender at the time of the commission of the first sex offense"; (5) "whether the sex offender has been adjudicated to be a sexually dangerous person pursuant to Section 14 of Chapter 123A or is a person released from confinement pursuant to section 9 of said chapter"; (6) "whether the offender served the maximum term of incarceration"; (7) "the relationship between the offender and the victim"; (8) "whether the offense involved the use of a weapon, violence, or infliction of bodily injury"; (9) "the number, date and nature of prior offenses"; (10) "conditions of release that minimize risk of reoffense and dangerousness posed to the public, including whether the sex offender is under probation or parole supervision, whether such sex offender is receiving counseling, therapy or treatment and whether such sex offender is residing in a home situation that provides guidance and supervision, including sex offender-specific treatment in community-based residential program"; (11) "physical conditions that minimize risks of reoffense including, but not limited to, debilitating illness"; (12) "whether the sex offender was a juvenile when he committed the offense, his response to treatment and subsequent criminal history"; (13) "whether psychological or psychiatric profiles indicate a risk of recidivism"; (14) "the sex offender's history of alcohol or substance abuse"; (15) "the sex offender's participation in sex offender treatment and counseling while incarcerated or while on probation or parole and his response to such treatment or counseling"; (16) "recent behavior, including behavior while incarcerated or while supervised on probation or parole"; (17) "recent threats against persons or expressions of intent to commit additional offenses"; (18) "review of any victim impact statement"; and (19) "review of any materials submitted by the sex offender, or others, on behalf of such offender." G. L. c. 6, § 178K(1)(a-l), as appearing in St. 1999, c. 24, § 2.

board's intended classification, the plaintiff requested a de novo hearing, pursuant to G. L. c. 6, § 178L(1), and 803 Code Mass. Regs. §§ 1.01, 1.38. The hearing examiner determined, by a preponderance of the evidence, that the plaintiff would be required to register as a level one sex offender. See 803 Code Mass. Regs. §§ 1.03, 1.10, 1.15, 1.22.[4] See also 803 Code Mass. Regs. § 1.22(3)-(4). The documentary evidence in this case included correspondence by and between the plaintiff and the board, including but not limited to the hearing notice form, a cover letter, and the certificate of service; a classification report which included the plaintiff's criminal history, court dockets, indictments, police reports containing the police version of offenses as well as police interviews of the plaintiff; the plaintiff's probation file; sex offender treatment records; a letter to the board from the plaintiff; letters from the victim to the plaintiff; and the plaintiff's purported "relapse prevention plan."

The administrative record shows that in 1994, when the plaintiff was twenty-six years old, he took a fourteen year old girl to a motel room in Eastham overnight. According to the victim's statement to the police, she fell asleep on the bed and later awoke to find her clothing removed, with the plaintiff atop her, attempting penile penetration of her vagina. She told him to stop, but he persisted for several minutes, failing to consummate the act. Although she refused sexual intercourse, she willingly accompanied him for the trip back to Hyannis. The plaintiff, when confronted by the police, acknowledged that he

---

[4]As the hearing is a de novo proceeding, the examiner may find that the sex offender has no obligation to register and may also maintain, decrease, or increase the board's recommended classification level. 803 Code Mass. Regs. § 1.22(2). In reaching a decision, the examiner, under 803 Code Mass. Regs. § 1.22(3), is directed to consider relevant credible evidence and reasonable inferences derived therefrom to determine:

"(a) the offender's risk of reoffense;

"(b) the offender's dangerousness as a function of the severity and extent of harm the offender would likely present to the public in the event of re-offense; and

"(c) in consideration of the foregoing, whether and to what degree public access to the offender's personal and sex offender information . . . is in the interest of public safety."

had taken the victim to the motel, but stated that she had initiated sexual relations, first undoing his pants and then performing oral sex on him. He claimed he next performed oral sex on her, but when she suggested penile vaginal intercourse, he refused. The plaintiff told police that he thought the victim was at least sixteen.[5]

The plaintiff pleaded guilty to the single count of indecent assault and battery on a person over the age of fourteen. He received a three-year term of probation, commencing on June 24, 1996, which he completed successfully. At the time of the hearing, he had been in the community, and offense-free, for six and one-half years from the date of sentencing. His former probation officer testified that the plaintiff was compliant with the conditions of his probation, and the plaintiff's wife described a positive and stable family life, with healthy, cared-for children. Also in the administrative record were reports that described the plaintiff's good attendance record and his involvement in treatment as "somewhat satisfactory." The final treatment progress report to the probation department, stated that the plaintiff "struggled in [his] group[] with the general issue of being a sex offender [and] . . . had difficulty at times discussing issues in [his] group, . . . minimized his offense[,] . . . was unable to assist other group members on a consistent basis[,] and did not put significant effort into his relapse prevention plan."[6]

In the plaintiff's written letter, as well as in his testimony, he

---

[5]Mistake as to age is not an affirmative defense to the crime of statutory rape. *Commonwealth* v. *Miller*, 385 Mass. 521, 522 (1982).

[6]The examiner gave considerable attention to the three-page document which the plaintiff described as his relapse prevention plan. The first page comprises two paragraphs of handwritten notes. The first paragraph consists of a list of purported triggers for relapse and is entitled "Feelings that could lead you to relapse." The second paragraph consists of the plaintiff's "plan to control these feelings" which includes staying involved in his support group of family and friends, seeking advice, and not putting oneself in a situation that could lead to trouble. The following pages provide a diagram of the "risk cycle" to reoffend and definitions of counseling terms used in conjunction with that diagram. While the examiner's comments are more extensive, it suffices to say that the examiner considered the plaintiff's plan lacking in substance and insufficient. Thus, the plan did not convince the examiner that the plaintiff had given much serious consideration to the causes and warning signs of his sexual offending behavior. The record supports the examiner's

asserted, in contrast with his initial report to the police, that the victim had told him that she was nineteen, that their behavior together had consisted of hugging and kissing, and that he had used bad judgment.

4. *The hearing examiner's decision.* The examiner found by a preponderance of the evidence that the plaintiff's risk to reoffend and danger to the public were both low, and he ordered the plaintiff to register as a level one sex offender.

In his decision, the examiner noted the positive aspects of the plaintiff's life (e.g., wife, children, job, home ownership, custody of a minor child from a previous relationship), but generally discounted the plaintiff's credibility as well as his attitude toward the original offense. The examiner highlighted conflicts between the initial evidence of the offense, as described by both the victim and the plaintiff to the police, and the plaintiff's later claims during the hearing.[7] The examiner's findings support his conclusion that the plaintiff failed to take responsibility for his actions and continued to minimize his responsibility for the offense. The examiner commented that accountability is of great importance in evaluating constraints against future criminal conduct, and cited *Quegan* v. *Massachusetts Parole Bd.,* 423 Mass. 834, 836 (1996), in which the court stated that "consideration in a parole decision of a prisoner's acknowledgment of his wrongdoing or his refusal to acknowledge his guilt is not arbitrary or unfair."[8] The examiner specifically quoted the court's statement that "[c]ertainly, a prisoner's acknowledgment of guilt would be a relevant factor in deciding whether the prisoner is likely to be rehabilitated." *Id.* at 837. We conclude that there was sufficient evidence to support the examiner's conclusion that the plaintiff be required

view of the plan's insufficiency, and the importance that the examiner accords to such plans.

[7]As noted above, the examiner found the victim, even though she did not appear at the hearing, to be totally credible. This determination was discounted by the judge on his review of the record.

[8]The court in *Quegan* also noted that the Legislature has indicated that among the relevant considerations for the parole board is "how the prisoner then regards the crime for which he is in prison." *Quegan* v. *Massachusetts Parole Bd.,* 423 Mass. at 837, quoting from G. L. c. 127, § 136 (1994 ed.).

Smith v. Sex Offender Registry Board.

to register as a level one sex offender because he minimized his offense and failed to acknowledge his criminal responsibility.[9]

5. *Substantial evidence.* The plaintiff complains that the examiner, and later the Superior Court judge, mistakenly accorded too much weight to one factor adverse to the plaintiff, that is, the minimizing of his sexual offense. The plaintiff argues that, among the twenty-four factors set forth by the board in 803 Code Mass. Regs. § 1.40 as bases for the board's classification decisions, there are three that cite an article by Hanson & Bussiere, entitled "Predicting Relapse: A Meta-Analysis of Sexual Offender Recidivism Studies," 66 J. of Consulting and Clinical Psychol. 348 (1998), presenting a cumulative statistical assessment of sixty-one studies (tracking a total of 28,972 sex offenders), in an attempt to identify and quantify those variables that do, or do not, predict sexual recidivism. Of particular significance to his case, the plaintiff urges, is the authors' conclusion that among the variables that bear virtually no statistical relationship to sexual recidivism are "denial," "clinical ratings of low treatment motivation," and degree of "[e]mpathy for victims," which the plaintiff argues are precisely the characteristics the hearing examiner and the judge cited (under the labels "minimizing" and "lack of accountability") as justifying the plaintiff's classification as a level one sex offender. Accordingly, the plaintiff argues, the classification decision, contradicting one of the board's own authoritative

---

[9] In concluding that the plaintiff "demonstrated through his history" to be of some risk to offend and some danger to the public, the examiner recited, in part:

"Whatever the petitioner has done since his index offense conviction by way of avoiding new offenses . . . is more than offset by his minimizing of his sex offense with an immature fourteen year old victim. Given the victim's in-depth account of the assault, his corroborative admissions to police, his plea of guilty in open court and finally his exercise of selective memory by his assertion at hearing, I find him to be not credible. This lack of accountability suggests heightened risk, as one who can rationalize away responsibility for past actions may as easily rationalize away constraints against future misconduct."

sources, constituted an abuse of discretion by the board.[10] The plaintiff asserts that the hearing examiner wrongly overemphasized the plaintiff's purported "minimizing," which thus led to the erroneous conclusion that that factor outweighed other positive aspects of the record that strongly favored the plaintiff's position. The plaintiff argues that there was no substantial evidence in support of his classification and that, consequently, the judge erred in affirming the board's decision.

The plaintiff raises for the first time on appeal the issue of the weight the examiner placed on the plaintiff's minimization and, accordingly, the argument is waived in this court. See *Wynn & Wynn, P.C.* v. *Massachusetts Commn. Against Discrimination*, 431 Mass. 655, 674-675 (2000) (arguments are waived if they could have been raised, but were not, before administrative agency); *Albert* v. *Municipal Ct. of Boston*, 388 Mass. 491, 493-494 (1983). See also *Green* v. *Brookline*, 53 Mass. App. Ct. 120, 128 (2001). The plaintiff also did not argue below that minimization of his offense was insufficient to support a level one classification. See *McCormick* v. *Labor Relations Commn.*, 412 Mass. 164, 169-170 (1992), and cases cited. He did not cite to the Hanson & Bussiere study as a basis for his claim that the examiner erred, nor did he submit a copy of that study to the Superior Court judge. See G. L. c. 6, § 178L(1), inserted by St. 1999, c. 74, § 2 (board reviews "any materials submitted by the sex offender"). Contrast *Commonwealth* v. *Reese*, 438 Mass. 519, 526-527 (2003) (articles not admissible in sexually dangerous person hearing under G. L. c. 123A).

We nonetheless exercise our discretion to address the issue because it presents the first such challenge to newly drafted guidelines for the classification of sex offenders under the statute, and it has been fully briefed by the parties. See *Brown* v. *Guerrier*, 390 Mass. 631, 632-633 (1983); *Commonwealth* v. *Clint C.*, 430 Mass. 219, 226-227 (1999). The record amply

---

[10]A similar argument based upon the Hanson & Bussiere article has been considered and rejected in challenges to classification under the sexually dangerous person statute, G. L. c. 123A. *Commonwealth* v. *Reese*, 438 Mass. 519, 526-527 (2003). *Commonwealth* v. *Bradway*, 62 Mass. App. Ct. 280, 288 n.12 (2004).

demonstrates that the plaintiff minimized his offenses, and the plaintiff does not contest that fact. Rather, he argues that the board and the judge accorded too much weight to the minimization when they rendered their decisions. We disagree.

The regulations, 803 Code Mass. Regs. § 1.40, contain specific guidelines for each of the statutory factors. See note 3, *supra.* The guidelines have "the force of law and must be accorded all the deference due to a statute." *Massachusetts Fedn. of Teachers* v. *Board of Educ.*, 436 Mass. 763, 771 (2002). The detailed guidelines for the ninth factor (date, number, and nature of prior offense) include consideration of "[a]ny other information relating to the nature of the sex offenses the [board] may deem useful in determining the risk and dangerousness . . . including, but not limited to, whether, or to what degree, the offender accepts responsibility that he committed his sex offenses . . . [and] whether, or to what degree, the offender expresses remorse for his sex offenses. . . ." 803 Code Mass. Regs. § 1.40(9)(c)(13). See *Lyman* v. *Commissioner of Correction*, 46 Mass. App. Ct. 202, 207 (1999) (policy denying sex offender transfer to less secure facility based on his failure to admit having committed offense rationally served legitimate State interest).[11]

The importance of accepting responsibility in the context of sex offender treatment is further highlighted in the eleventh factor, which acknowledges that an offender's current participation

---

[11]Indeed, in *McKune* v. *Lile*, 536 U.S. 24, 33 (2002), the United States Supreme Court recently noted:

"Therapists and correctional officers widely agree that clinical rehabilitative programs can enable sex offenders to manage their impulses and in this way reduce recidivism. See U.S. Dept. of Justice, Nat. Institute of Corrections, A Practitioner's Guide to Treating the Incarcerated Male Sex Offender xiii (1988) ('[T]he rate of recidivism of treated sex offenders is fairly consistently estimated to be around 15%' whereas the rate of recidivism of untreated offenders has been estimated to be as high as 80%. Even if both of these figures are exaggerated, there would still be a significant, difference between treated and untreated individuals). . . . Research indicates that offenders who deny all allegations of sexual abuse are three times more likely to fail in treatment than those who admit even partial complicity. See B. Maletzky & K. McGovern, Treating the Sexual Offender 253-255 (1991)."

in sex offender treatment reduces risks, and in the eighteenth factor, which "examines whether an offender participated in and was responsive to sex offender treatment while on community supervision." 803 Code Mass. Regs. § 1.40(18). In addition, the twenty-fourth factor indicates that an offender who has performed "less than satisfactorily" while in treatment poses a risk to reoffend.[12] *Id.* at § 1.40(24).

The plaintiff's minimization implicates all three of these treatment factors and supports the examiner's conclusion that the plaintiff's participation in treatment during his probation was relatively incomplete and not taken seriously by the plaintiff.[13] It was well within the examiner's discretion to conclude that the plaintiff did not reduce his risk to reoffend through treatment, and the board's regulatory factors and the evidence support that conclusion.

Nonetheless, the plaintiff criticizes the examiner's decision because he did not rely on one part of the Hanson & Bussiere study which indicates that minimization is not statistically linked to recidivism. The plaintiff asserts that, because the board cites that study elsewhere in some of the factors enumerated in 803 Code Mass. Regs. § 1.40, the examiner erred by failing to apply the study's findings to every factor in the case. We are not persuaded.

The plaintiff does not directly challenge the validity of the regulations, and he would not succeed in such a challenge if he had raised one. The board is not required to cite to a particular study or article in support of any of the factors in regard to the role minimization plays in assessing risk. *Lyman* v. *Commissioner of Correction*, 46 Mass. App. Ct. at 206. See *McKune* v. *Lile*, 536 U.S. 24, 33 (2002) (citing studies supporting notion that accepting responsibility for sex crimes is critical component of sex offender treatment that can reduce recidivism). Here, as in *Quegan* v. *Massachusetts Parole Bd.*, 423 Mass. at 837, there

---

[12]The regulation defines "performing less than satisfactorily" as including "failure to accept responsibility for his sex offense(s), or as otherwise stated by the treatment provider." 803 Code Mass. Regs. § 1.40(24).

[13]The plaintiff does not seem to dispute that the examiner's conclusion that plaintiff's treatment performance was less than satisfactory, or that the examiner's conclusion that the plaintiff's relapse prevention plan was inadequate.

is a rational basis for the examiner's application of the factors to the plaintiff's case. As an administrative agency, the board has considerable leeway in interpreting the statute and its regulations, which, as noted above, stand on the same footing as statutes, with reasonable presumptions to be made in favor of their validity. *Student No. 9* v. *Board of Educ.*, 440 Mass. 752, 762-763 (2004). As "long as the [board's] interpretation of its regulations and statutory mandate is rational, and adhered to consistently, it should be respected," and given substantial deference. *Midland States Life Ins. Co.* v. *Cardillo*, 59 Mass. App. Ct. 531, 537 (2003), quoting from *Boston Police Superior Officers Fedn.* v. *Boston*, 414 Mass. 458, 462 (1993).

On its face, the examiner's detailed written decision was balanced and fair. The judge was correct in affirming the classification.

6. *Equal protection and benefit, nunc pro tunc, of new Legislation.* The plaintiff asserts that G. L. c. 6, § 178E(*f*), as in effect prior to St. 1999, c. 74, § 2, denies him equal protection of the law under the Fourteenth Amendment to the United States Constitution and art. 1 of the Massachusetts Declaration of Rights because, at the time he was convicted and sentenced in June, 1996, the revised statute had not yet been enacted and, consequently, he did not have the benefit of it. That statute permits a Superior Court judge to relieve an offender of his obligation to register if (a) the offender was convicted of a sex offense (as defined in G. L. c. 6, § 178C), after December 12, 1999; (b) the offender was not convicted of a "sexually violent offense" or an "offense against a child"; (c) the judge did not impose "immediate confinement"; and (d) "the circumstances of the offense in conjunction with the offender's criminal history indicate that the sex offender does not pose a risk of reoffense or a danger to the public."[14] The plaintiff asserts that these conditions are present in his case, except that he was convicted before December 12, 1999. He asserts that the statute,

---

[14]General Laws c. 6, § 178C, defines an "offense involving a child" as "an indecent assault and battery on a child *under 14*" (emphasis supplied). The defendant was convicted of indecent assault and battery on a person age fourteen or over, G. L. c. 265, § 13H. Thus, the defendant was not convicted of an offense involving a child for the purpose of the statute, even though the victim in this case was fourteen years old at the time of the offense.

accordingly, creates two classes of sex offenders: those convicted before, and those convicted after, December 12, 1999. He further argues that offenders like himself who were convicted before December 12, 1999, are being treated more harshly because they did not have the opportunity to seek relief from having to register at the time of their convictions. The plaintiff claims that this is unlawful disparate treatment and violates his State and Federal equal protection rights. We are not persuaded.

As an initial matter, the plaintiff has waived this argument because he did not present it to the examiner at the hearing. See *Albert* v. *Municipal Ct. of Boston*, 388 Mass. at 493-494. Proceeding nonetheless, we note that the equal protection analysis is the same under both the Federal and State Constitutions. *Commonwealth* v. *Tate*, 424 Mass. 236, 239, cert. denied, 522 U.S. 832 (1997). Sex offenders are not a suspect class. *Dutil, petitioner*, 437 Mass. 9, 20-21 (2002). Because this case involves no suspect group or fundamental right, the distinction between the two groups of sex offenders need be supported only by a "rational relationship between the line drawn and a legitimate State interest." *Commonwealth* v. *Tate, supra.* "Stripped to its essentials, [the plaintiff's] claim challenges the basic validity of all prospective law making." *Id.* at 240, quoting from *Baker* v. *Superior Ct.*, 35 Cal. 3d 663, 670 (1984).

We also note that a sex offender convicted before December 12, 1999, is not deprived of judicial review of his classification. This case is evidence of that. We recognize that the procedure available to persons sentenced after December 12, 1999 (review by the sentencing judge, with fresh evidence, and no administrative decision to which a reviewing court must, as here, give deference) is a more attractive form of judicial attention. Nonetheless, we conclude that, to the extent the later review by a different judge constitutes disparate treatment, it does not deprive the defendant of his equal protection rights. "[T]he mere fact that some persons were at some later date governed by a law more favorable to them than the law which applied to the [the plaintiff] is insufficient to strike down an otherwise valid statute; to hold the opposite would be either to eradicate all new statutes or to

make them all retroactive." *Commonwealth* v. *Tate,* 424 Mass. at 240, quoting from *Commonwealth* v. *Purdy,* 408 Mass. 681, 685 (1990).

Finally, we consider the plaintiff's prayed-for relief impractical in application. As the judge noted in this case, "sending cases back to the sentencing judge for a delayed determination would be of little utility, as the [j]udge's memory of the case may have dimmed." The statute and regulations contain substantial protections and safeguards. If, after board review, an offender convicted before December 12, 1999, believes he is entitled to relief, he can seek judicial review as the plaintiff has done in this case.

The judgment is affirmed.

*So ordered.*