Nickerson, Gary A., J.
Pursuant to G.L.c. 30A, §14, Plaintiff John Doe #29701 (“Plaintiff’) seeks judicial review of the Commonwealth of Massachusetts Sex Offender Registry Board’s (“Board”) October 6, 2011 decision requiring Plaintiff to register as a Level II Sex Offender. This classification requires that the public have access to his registration information pursuant to G.L.c. 6, §§178I-178J. Plaintiff had previously been classified as a Level I offender, based on the same governing offense, which did not require that his registration information be made publicly available.
Plaintiff contends the Board’s reclassification decision was unsupported by credible evidence, not grounded in fact or law, and violates his federal and state constitutional rights. For the reasons discussed below, the Court finds that the Board’s decision was free from legal error, supported by substantial evidence in the record, and not otherwise violative of Plaintiffs rights. Plaintiffs Motion for Judgment on the Pleadings is therefore DENIED. The Board’s October 6, 2011 decision requiring Plaintiff to register as a Level II sex offender is AFFIRMED.
FACTUAL BACKGROUND
The governing offense occurred in 1993, when Plaintiff was eighteen. Exh 1. The victim was a 15-year-old acquaintance of his. Decision (“D.”) at 7. Plaintiff and a friend arranged to meet the victim and her foster sister at Patriot’s Square Plaza in Dennis. AR at 24. When Plaintiff and his friend arrived, they asked if the girls wanted alcohol, and the girls indicated yes. Id. Plaintiff made a phone call and returned with a bag of Busch beer. Id. The four then got into Plaintiffs truck and began drinking. Id. At some point, they drove to a convenience store and purchased cigarettes and juice. Id. They then drove to a house where Plaintiff indicated he used to live, and used a key to enter. Id.
The four drank beer and smoked cigarettes in the kitchen. D. at 7. Eventually, Plaintiff and the victim went to a bedroom. Id. When she spoke to police, the victim would not disclose the details of what occurred, but implied that she had gone to the bedroom with Plaintiff voluntarily. Id. When asked by police what transpired between him and the victim at this point, Plaintiff responded, “she did what she had to do.”ARat29. Plaintiff stated that this meant performing oral sex on him. Id. Afterwards, Plaintiff and the victim returned to the kitchen, where Plaintiff urged his friend to take the victim’s foster sister into the other bedroom. Id.
At some point, the victim’s foster sister became tired and went to the other bedroom to lie down. D. at 7. She stated that her next memory was waking up with her pants around her ankles and Plaintiffs friend having sex with her. Id. While Plaintiffs friend and the victim’s foster sister were engaged in intercourse, Plaintiff and the victim entered the room to get cigarettes. Id. They then returned to the first bedroom and had sex. AR at 29.
Eventually, the girls went into the bathroom together, both still naked from the waist down. Id. at 24-25. They smoked cigarettes and threw the butts in the bathtub. Id. at 24. Plaintiff then insisted that everyone had to leave because the landlord was coming. Id. The girls stated they could not go home or they would get in trouble. D. at 7. According to Plaintiffs friend, Plaintiff “dumped” the victim and her foster sister at an apartment complex, telling them to use the phone in Apartment 6 to call for a ride. AR at 27. The girls knocked on several doors trying to locate what Plaintiff said was his brother’s apartment. D. at 7. Eventually, a resident called the police and the girls *592 were taken into custody. Id. The victim, her foster sister, and mother later went to the Harwich Police Station to report the incident. Id. at 6.
Plaintiff admitted to oral and vaginal intercourse with the victim. D. at 8. Initially charged with rape and abuse of a child under 16, Plaintiff pled guilty to indecent assault and batteiy on a person age 14 or older, in violation of G.L.c. 285, § 13(h). D. at 6, n.3.
PROCEDURAL HISTORY
In May 1993, Plaintiff pled guilty to indecent assault and batteiy on a person age 14 or over in connection with the incident described above. He was sentenced to one year incarcerated suspended for three years. D. at 8. In September 2003, the Board notified Plaintiff of its recommendation that he be classified as a Level I sex offender. D. at 3. The Board issues such a classification if it finds the individual poses a low risk of reoffending and his degree of dangerousness is low enough so as not to require making his sex offender registration information publicly available as a matter of public safeiy. Qqq. Plaintiff challenged this classification and requested a hearing, which was held on May 17, 2004. Id. at 3. After de novo review of the evidence, the Hearing Examiner concluded that Plaintiff posed a low risk of reoffending and a low degree of dangerousness. Id. On May 24, 2004, the Board issued its final decision, requiring Plaintiff to register as a Level I sex offender. Id.
Subsequent to this final classification, Plaintiff was convicted of the following offenses: (1) assault and battery, (2) two counts of larceny, (3) credit card misuse, (4) knowingly receiving stolen property, and (5) two counts of failing to register as a sex offender, in 2006 and 2011, respectively. Id. at 3-4. He was convicted of no further sexual crimes after the governing offense. Id. at 3. As a result of his subsequent convictions, including for a violent crime and his continuing failure to register as a sex offender, the Board notified Plaintiff of its recommendation that he be reclassified as a Level II (moderate-risk) sex offender. Id. at 4. Plaintiff again challenged the Board’s recommendation, and appeared (but did not testify) at a hearing on August 24, 2011 before Hearing Examiner Joseph Casey. Plaintiff was represented by counsel, and submitted an affidavit and correspondence between himself and the Board as exhibits. Additional documentary evidence introduced at the hearing included Plaintiffs criminal record and disciplinary reports, probation record, and incident reports from the Harwich, Yarmouth, and Dennis Police Departments.
On October 6, 2011, the Board issued a final 16-page decision, finding that Plaintiff was required to register as a Level II sex offender. Plaintiff then filed this complaint in Superior Court, challenging the Board’s final decision and seeking to annul the elevation of his status from Level I to Level II.
DISCUSSION
I. Standard of Review
Under G.L.c. 30A, §14, any person aggrieved by an agency’s decision in an adjudicatoiy proceeding may appeal that decision in Superior Court. The court may reverse or modify the Board’s decision if the decision is “unsupported by substantial evidence, arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law.” G.L.c. 30A, §14(7). The party appealing an administrative decision bears the burden of demonstrating its invalidity. See Merisme v. Board of Appeals on Motor Vehicle Liab. Policies & Bonds, 27 Mass.App.Ct. 470, 474 (1989).
The court’s review of the Board’s decision must give “due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” G.L.c. 30A, §14(7). A court may not displace the agency’s choice between two fairly conflicting views even though the court might have justifiably made a different decision had the matter been before it de novo. See Lisbon v. Contributory Ret. Appeal Bd., 41 Mass.App.Ct. 246, 257 (1996).
II. Plaintiffs Arguments
A. The Board’s Findings Were Not Supported by Credible Evidence
Plaintiff, as the appealing party, bears the “heavy burden” of demonstrating that the Board’s decision was not supported by substantial evidence. Zoning Bd. of Appeals of Canton v. Housing Appeals Bd., 76 Mass.App.Ct. 467, 472 (2010). Substantial evidence is “such evidence as a reasonable mind might accept as adequate to support a conclusion.” New Boston Garden Corp. v. Bd. of Assessors of Boston, 383 Mass. 456, 466 (1981). A reviewing court may not substitute its judgment on questions of fact for that of the Board. Southern Worcester County Voc. Sch. Dist. v. Labor Relations Comm’n, 386 Mass. 414, 420-21 (1982).
Here, Plaintiff has failed to show that the Board’s decision was unsupported by substantial evidence, as required for a reversal under G.L.c. 30A, §14(7). In determining that Plaintiff posed a moderate risk of reoffending and a moderate danger to the public, the Board cited and applied the following seven statutoiy factors:
(1): Factor 7 — Relationship between Victim and Offender. The Hearing Examiner found that the relationship between Plaintiff and the victim indicated an elevated risk of reoffense and degree of dangerousness. Specifically, he stated, “(t]he potential pool of victims is deemed greater when an offender has a history of assaulting strangers or extrafamilial victims. Because the Victim knew [Plaintiff] previously, I find their relationship was an extrafamil-ial one.” D. at 7, n.5.
(2) Factor 9(a) — Time in the Community: As the Hearing Examiner noted, “[t]he period of time in *593 which an offender has been in the community since his release from his most recent period of incarceration without committing any new offenses ... is an important consideration” in determining an individual’s risk of reoffense and degree of dangerousness. Statistics demonstrate that, in general, an offender’s risk of recidivism decreases after 5-10 years in the community without re-offending. That risk becomes substantially lower after the offender has spent 10 or more years in the community without committing another offense. Statistically, Plaintiff falls into the highest risk category, as he was released a matter of months ago, on December 16, 2011. See D. at 11, n.9.
(3) Factor 9(b) — Criminal History: Per the Board’s regulatory factors, Plaintiffs criminal history is relevant to his risk of reoffense and degree of dangerousness. Because Plaintiffs record includes violent crimes and sex offenses, the Hearing Examiner considered Plaintiffs juvenile and adult criminal history, as well as the dates and nature of his prior convictions in “assessing his propensity for lawlessness and anti-social behavior.” See D. 13, n.12.
(4) Factor 9(c)(3) — Commission of Multiple Sexual Acts: Plaintiff admitted to both orally and vaginally penetrating the victim. AR 29. In analyzing this factor, the Hearing Examiner stated, ‘jtjhe commission of multiple sexual acts on a single victim during a single offending episode speaks to increased deviant sexual arousal and/or increased compulsivity.” D. at 8, n.6.
(5) Factor 9(c)(6) — Non-Sexual Violent Offense: Plaintiff has been previously convicted of at least one non-sexual, violent offense. SeeARExh. 1. The Hearing Examiner observed that under this factor, “an offender, such as the Petitioner, who has been convicted or adjudicated of any non-sexual violent offense is more likely to reoffend and present a greater danger if he has demonstrated that he can act violently and with no regard for the safety of others.” D. at 13, n.ll.
(6) Factor 16 — Substance and/or Alcohol Abuse: The Sex Offender Registry Law and applicable regulations state that alcohol may act as a disinhibitor to an offender’s sexual urges. See G.L.c. 6, § 187k(l)(g). “Given the role alcohol played in the sex offense and in his ongoing substance abuse issues,” the Hearing Examiner determined that Plaintiffs history of drug and alcohol abuse weighed in favor of reclassifying him as a Level II offender. See D. at 14, n.13.
(7) Factor 20 — Behavior While on Community Supervision: Plaintiffs probation record indicates multiple violations, including as recently as April 2011, when his probation was revoked and he was sentenced to six months’ committed time. As the Hearing Examiner observed, “(o)ffenders who have unsatisfactorily adjusted to the external controls inherent in community supervision pose a significant concern to public safety when those controls are removed. Unsatisfactory adjustment is evidenced by violation of rules or conditions of release, as in this case.” D. at 12, n.10.
B. The Board’s Rulings Were Factually Unsupported and Legally Erroneous
An agency’s decision is only deemed arbitrary and capricious “when it lacks any rational explanation that reasonable persons might support.” City of Cambridge v. Civil Serv. Comm’n, 43 Mass.App.Ct. 300, 303 (1997). If “reasonable minds can differ,” an agency’s decision will not be set aside. See Doe v. Superintendent of Schools of Stoughton, 437 Mass. 1, 6 (2002). Thus, this Court’s inquiry is limited to whether the record before the Board contained “such evidence as a reasonable mind might accept as adequate to support” its determinations that Plaintiff presented a moderate risk of re-offending and moderate risk of public danger. Labor Relations Comm’n v. University Hosp., Inc., 359 Mass. 516, 521 (1971). As discussed above, the Board’s decision was grounded in an extensive administrative record and detailed in a sixteen-page opinion after the benefit of oral argument and documentary evidence from both sides.
Furthermore, the Board’s reasonable interpretations of the statute it is charged with administering and its own regulations are entitled to deference. Dowling v. Registrar of Motor Vehicles, 425 Mass. 523, 525 (1997). Because the record contains sufficient evidence upon which to reclassify Plaintiff, as discussed above, the Board’s decision must be upheld. The Hearing Examiner has discretion to determine, based on the evidence presented, which regulatory factors apply and how much weight to afford them. See Smith v. Sex Offender Registry Board, 65 Mass.App.Ct. 803, 812 (2006). Indeed, the Board is authorized to consider “any useful information” in evaluating Plaintiffs risk of reoffense and degree of dangerousness. SeeG.L.c. 6, §178L(1) (emphasissup-plied). Here, numerous considerations contributed to the Board’s determination that Plaintiff posed a moderate risk of reoffending and a moderate degree of public danger. These included Plaintiffs convictions for non-sexual, violent crimes subsequent to the governing offense (including two convictions for failure to register as a sex offender), and the fact that the victim was extra-familial.[1]
C. The Board’s Decision Violates Plaintiffs Federal and State Constitutional Rights
Lastly, Plaintiff argues that being required to register as a Level II sex offender violates his state and federal constitutional rights, including his right to be free from double jeopardy. He also argues that the governing offense occurred in 1993, prior to the adoption of G.L.c. 178, §c-q, and the statute should not be retroactively applied to him. However, such arguments are unavailing because the Sex Offender Registry Law *594 is a civil, regulatory enactment rather than a criminal, punitive one. See Smith v. Doe, 538 U.S. 84, 105-06 (2003) (because sex offender statutes are civil and non-punitive, their retroactive application does not violate the Ex Post Facto Clause). In light of the Supreme Judicial Court’s holding that civil commitment of sexually dangerous persons is non-punitive and therefore does not violate the prohibition against ex post facto laws, Plaintiff will be unable to establish that mere Level II registration violates his constitutional rights. See Comm. v. Bruno, 432 Mass. 489, 500-02 (2000).
Further, any privacy interest burdened by the public availability of Plaintiffs registration information is outweighed by the Commonwealth’s regulatory interest in public safety. See Opinion of the Justices, 423 Mass. 1201, 1232-33 (1996).
Because the registration and community notification process is not penal, the constitutional prohibitions against cruel and unusual punishment and double jeopardy are likewise inapplicable. See id. at 1239-42.
ORDER
For the foregoing reasons, it is hereby ORDERED that Plaintiffs Motion for Judgment on the Pleadings is DENIED. The Board’s Decision dated October 6, 2011 requiring Plaintiff to register as a Level II sex offender is AFFIRMED.

 Under the statutory and regulatory factors, an extra-familial victim increases the risk of recidivism and danger to the public due to the larger pool of potential victims.