NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-555

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 523873

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff appeals from a Superior Court judgment affirming his classification by the Sex Offender Registry Board (board) as a level three sex offender.  Doe argues that the hearing examiner erroneously applied a high-risk factor, impermissibly disregarded Doe's expert's testimony, and arrived at a classification decision unsupported by clear and convincing evidence.  We affirm.

Background.  In June 2014, after dinner and drinks at a restaurant with friends, a woman hailed a taxi driven by Doe. Doe drove to a secluded location, got in the back seat next to the woman, and began kissing her and touching her breasts and buttocks, then lifted her dress and digitally penetrated her vagina.  The victim resisted, saying "no" and "stop," and asking Doe to take her to her destination.  As the victim struggled

with Doe, he grabbed her by the throat.  When he was finished, Doe returned to the driver's seat, drove to State Street in Boston, and dropped the victim off, yelling, "Get the fuck out, I didn't do anything wrong."  The victim later discovered she was missing her wallet and cell phone.  Through surveillance video, detectives saw Doe make several purchases using the victim's debit card.

As a result of this assault, in September 2015 Doe was convicted of kidnapping, aggravated rape, indecent assault and battery on a person aged fourteen or over, assault and battery, unarmed robbery, and credit card fraud over $250.[1]  He was sentenced to a State prison term of six to eight years for aggravated rape, followed by concurrent ten-year terms of probation for the remaining counts; he was also required to register as a sex offender.

In July 2020, prior to Doe's release from prison, the board notified him of his preliminary classification as a level three sex offender.  Doe requested an evidentiary hearing, which was held in March 2021.  The hearing examiner found clear and convincing evidence that Doe posed a high risk to reoffend and a high degree of dangerousness, which justified classifying him as a level three sex offender and publishing his sex offender

---

[1] The kidnapping conviction was vacated on appeal as duplicative of the aggravated rape conviction.

2

status online.  Doe timely filed a complaint for judicial review in the Superior Court.  In April 2022, a Superior Court judge issued a decision affirming the classification decision.  This appeal followed.

Discussion.  1.  Factor 2.  The hearing examiner applied one high-risk factor:  "Repetitive and Compulsive Behavior," 803 Code Mass. Regs. § 1.33(2) (2016) (factor 2).[2]  Doe argues that the hearing examiner should not have applied factor 2 because the term "sexual misconduct" used in the regulation is "impermissibly vague," and also because his sexual misconduct was not predictive of future sex offenses.

The hearing examiner applied factor 2 based on Doe's 2001 arrest for engaging in sexual conduct for a fee, see G. L. c. 272, § 53A, after he offered to pay a female undercover police officer to perform a sexual act.  Doe admitted to

---

[2] The relevant language of factor 2 is as follows:

> "The Board may give increased weight to offenders who have been discovered and confronted (by someone other than the victim) or investigated by an authority for sexual misconduct and, nonetheless, commit a subsequent act of sexual misconduct.  The most weight shall be given to an offender who engages in sexual misconduct after having been charged with or convicted of a sex offense."

803 Code Mass. Regs. § 1.33(2)(a).  The hearing examiner did not rely on the questioned language of factor 2, "which provided for a finding of repetitive and compulsive behavior based only on repetitive offenses occurring after enough time for reflection." Doe, Sex Offender Registry Bd. No. 6729 v. Sex Offender Registry Bd., 490 Mass. 759, 765 (2022).

3

sufficient facts, and the case was dismissed after being continued without a finding (CWOF).  The hearing examiner considered the conduct underlying Doe's 2001 arrest to be "sexual misconduct"; because Doe committed that sexual misconduct in 2001 and then committed the rape in 2014, the hearing examiner gave factor 2 "increased weight."

As to Doe's vagueness challenge, because he did not raise this claim before the hearing examiner or the Superior Court judge, it is waived.  See Doe, Sex Offender Registry Bd. No. 203108 v. Sex Offender Registry Bd., 87 Mass. App. Ct. 313, 320-321 (2015).  Even if the issue were not waived, however, we are not persuaded that the term "sexual misconduct" in factor 2 is vague as applied to Doe's act of engaging in sexual conduct for a fee.  The board's use of the term "sexual misconduct," which appears in factor 2 and elsewhere in the regulations, as opposed to the defined term "sex offense," see G. L. c. 6, § 178C, which is also used throughout the regulations, is clearly intentional. It is obviously meant to include a broader range of conduct than the specific offenses enumerated in the definition of "sex offense."  We have no doubt that any reasonable person would understand that the criminal conduct of attempting to pay a stranger to perform a sexual act, though not a defined "sex offense," is encompassed by the term "sexual misconduct."

4

Doe next argues that the act of solicitation is not predictive of sexual recidivism.  Doe posits that only the sex offenses enumerated by the Legislature have such predictive value.  In the absence of any precedent supporting this view, we are not persuaded.  Doe's contention that only designated sex offenses are relevant under factor 2 in effect questions the board's determination, in the regulation itself, that sexual misconduct not rising to the level of a "sex offense" is indicative of a risk of reoffense.[3]  We accord deference to the board's judgment, expressed in its regulations, concerning the type of conduct that presents a high risk of reoffense.  See Doe, Sex Offender Registry Bd. No. 356315 v. Sex Offender Registry Bd., 99 Mass. App. Ct. 292, 297-298 (2021) (Doe No. 356315).

Turning to the hearing examiner's weighing of factor 2 in this case, we discern no error or abuse of discretion.  The regulation distinguishes between offenders who have been investigated by authorities for "sexual misconduct" and subsequently engage in additional sexual misconduct and those

_____

[3] The fact that several of the risk-elevating factors identified in the regulations are not associated with either sex offenses or sexual misconduct suggests that Doe's narrow reading of factor 2 is not consistent with the board's broader assessment of risk and danger.  See, e.g., 803 Code Mass. Regs. § 1.33(9) (alcohol and substance abuse); § 1.33(10) (contact with criminal justice system); § 1.33(11) (violence unrelated to sexual assaults).

5

who are charged with or convicted of a "sex offense" and subsequently engage in additional sexual misconduct.  For the first category, which includes Doe, factor 2 may be accorded "increased weight."  803 Code Mass. Regs. § 1.33(2)(a).  For the second category, factor 2 may be given "[t]he most weight."  Id.  As the Superior Court judge aptly put it, "The thrust of Factor 2 is that, even after Doe was held to account (via the charge and the CWOF) for his sexual misconduct, in 201[4] he engaged in additional and more serious sexual misconduct."  The hearing examiner properly applied factor 2, giving it "increased," but not "most," weight based on the finding that although Doe was investigated by authorities and charged for sexual misconduct, he nonetheless went on to commit a subsequent act of sexual misconduct -- an aggravated rape.[4]

2.  Expert testimony.  At the hearing, Doe submitted a psychological assessment report written by Dr. Joseph Plaud, a specialist in evaluating and treating sex offenders.  Plaud

_____

[4] We are not persuaded that the fleeting and conclusory testimony of Doe's expert, that "paying for sex" is "a different quality or type of offense that puts it out of the realm" in predicting future contact sex offenses, provided an adequate basis for the hearing examiner to disregard factor 2 or to find it inapplicable.  We find more persuasive Doe's argument that the thirteen-year gap between offenses suggests a lack of compulsivity; it is not our place, however, to substitute our judgment for that of the hearing examiner or the board where the examiner's application of the board's regulation is supported by the evidence.  See Doe No. 356315, 99 Mass. App. Ct. at 300.

wrote and testified that Doe presented only a moderate risk and should be classified as a level two sex offender. The hearing examiner credited Plaud's expertise and the validity of Plaud's methods, but noted that the testing process underlying the report "did not reflect an assessment based on the Board's comprehensive regulatory factors." Although the hearing examiner generally agreed with Plaud's "application of the factors," the hearing examiner attached weight to the high-risk and risk-elevating factors that Plaud did not consider and concluded that Doe presented a high risk to the public.

Doe claims that the hearing examiner abused his discretion by assigning "limited weight" to Plaud's opinion and erred by instead limiting his analysis to the regulatory factors. We discern no error or abuse of discretion. The hearing examiner was required to, and did, explain his reasons for partially disregarding Plaud's expert opinion and reaching a different conclusion based on the applicable risk factors. See Doe, Sex Offender Registry Bd. No. 1211 v. Sex Offender Registry Bd., 447 Mass. 750, 764 (2006). This is not a case where the plaintiff's expert presented reliable evidence that was not addressed in the board's regulations. See Doe, Sex Offender Registry Bd. No. 205614 v. Sex Offender Registry Bd., 466 Mass. 594, 604 (2013); Doe, Sex Offender Registry Bd. No. 151564 v. Sex Offender Registry Bd., 456 Mass. 612, 622-623 (2010). The hearing

7

examiner was required to consider Plaud's testimony; he was not required to accept it or substitute Plaud's risk assessment for his own.  See Doe No. 205614, supra at 595.

3.  Classification as level three offender.  Finally, Doe contends that because most of the risk-elevating factors arose from a single event and there were multiple mitigating factors, the hearing examiner's classification decision was not supported by clear and convincing evidence.  Rather, Doe contends that the hearing examiner merely "engaged in a perfunctory effort based on a tally sheet of aggravating and mitigating factors, concluding in the end simply that the former outweighed the latter."  Doe, Sex Offender Registry Bd. No. 11204 v. Sex Offender Registry Bd., 97 Mass. App. Ct. 564, 575-576 (2020).  We disagree.

Hearing examiners are required to consider the thirty-eight high-risk, risk-elevating, risk-mitigating, and additional factors set forth in the regulations.  See 803 Code Mass. Regs. § 1.33.  Nonetheless, "[t]he final classification level is not based on a cumulative analysis of the applicable factors, but rather a qualitative analysis of the individual sex offender's history and personal circumstances."  Id., third par.  Hearing examiners have discretion, and enjoy substantial deference upon review, to choose and weigh the applicable factors so long as their interpretation and application of the regulations are

8

rational.  See Smith v. Sex Offender Registry Bd., 65 Mass. App. Ct. 803, 813 (2006), citing Midland States Life Ins. Co. v. Cardillo, 59 Mass. App. Ct. 531, 537 (2003).  See also Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 649 (2019) ("A reviewing court may set aside or modify [the board]'s classification decision where it determines that the decision is in excess of [the board]'s statutory authority or jurisdiction, violates constitutional provisions, is based on an error of law, or is not supported by substantial evidence").

As to Doe's risk to reoffend, the hearing examiner concluded Doe presented a high risk to reoffend based on the fact that he raped a stranger in a public place and strangled her during the assault.  The attack came after Doe had previously been investigated and charged for sexual misconduct, supporting the application of high risk factor 2, and his criminal history, albeit short, and minor disciplinary reports while incarcerated increased the risk he presented.  The hearing examiner considered, but gave only limited weight, to Doe's expert's classification recommendation; gave moderate weight to Doe's age and participation in sex offender therapy; and gave full weight to his support system.  The hearing examiner likewise found that Doe presented a high degree of dangerousness based on the facts that he strangled the victim during the

9

assault, that the victim was vulnerable because she was intoxicated, and that the attack involved vaginal penetration, notwithstanding the fact that Doe would be subject to probation supervision for ten years after release.  In short, the hearing examiner considered and balanced the relevant factors, and his decision was supported by substantial evidence.  We see no basis to disturb the examiner's conclusions.

<u>Judgment affirmed</u>.

By the Court (Blake, Massing & Hand, JJ.[5]),

*Joseph F. Stanton*

Clerk

Entered:  December 1, 2023.

---

[5] The panelists are listed in order of seniority.